IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KD Graphics, Inc.**<br>1225 Walnut Street<br>Philadelphia, PA,     and<br><br>**Jeffrey Kwait**<br>1225 Walnut Street<br>Philadelphia, PA<br>              PLAINTIFFS,<br>              v.<br><br>**Tropical Graphics, Inc.,**<br>4717 NE 12th Avenue<br>Oakland Park, FL     and<br><br>**Paul Hirst,**<br>4717 NE 12th Avenue<br>Oakland Park, FL,<br>              DEFENDANTS. | CIVIL ACTION<br>NO.  02CV4041<br><br><br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

### PARTIES

1.  Plaintiff KD Graphics Inc., ("KD") is a printing business with its principal place of business located at 1225 Walnut Street, Philadelphia, PA.  KD is a citizen of Pennsylvania.

2.  Jeffrey Kwait ("Kwait") is the president of KD.  His business address is 1225 Walnut Street, Philadelphia, PA and he lives in Philadelphia.  He is a citizen of Pennsylvania.

3.  Defendant Tropical Graphics, Inc. ("Tropical") has its principal place of business located at 4717 NE 12th Avenue, Oakland Park, FL.  It is a citizen of Florida.

4. Defendant Paul Hirst ("Hirst"), is president of Tropical and has a business address of 4717 NE 12th Avenue, Oakland Park, FL. Hirst is president of Tropical and a citizen of Florida.

## JURISDICTION

5. Jurisdiction is premised on the violation of federal law. 28 U.S.C.A.§1331.

6. Jurisdiction is also premised on diversity of citizenship. 28 U.S.C.A.§1332.

7. Both Defendants are citizens of Florida. Both Plaintiffs are citizens of Pennsylvania.

8. Plaintiffs claim damages, exclusive of interest and costs, in excess of $75,000.

9. This court has jurisdiction over the state law claims under the principles of pendant and supplemental jurisdiction.

## FACTS

10. In September 2001, KD made the decision to expand its business into dye sublimation printing onto fabric.

11. Dye sublimation printing requires specialized printers dedicated to the sublimation process. Using specialized inks, the print goes onto paper and then in a process similar to a heat press is sublimated onto fabric for the finished piece.

12. On or about August 2001, KD purchased specialized sublimation printing equipment manufactured by Mutoh and known as a Falcon printer (hereinafter referred to as "Mutoh").

13. KD needed specialized ink for the Mutoh printer. After investigating its purchasing options, KD decided to purchase ink for the Mutoh printer from Tropical.

14. Tropical's website stated the following: "As the world's largest producer of dye sublimated ink, no one has more experience than we do dealing with ink jet dye sublimation. So you know that if you use our system, you are guaranteed to get the desired results." Additionally the website promised "Great Technical Support" and "No More Clogging."

15. Hirst on or about August of 2001, in addition to restating the promises contained on the website to Kwait, stated that Tropical sold inks for dye sublimation printers which were manufactured by chemical giant BASF.

16. In justified and reasonable reliance on the representations made by Defendants, on or about August 21, September 10, 12, 24, October 4, 2001, and on two different occasions in 2002, KD purchased ink from Tropical. After taking delivery of the ink, KD began to use the ink in the printing equipment. KD immediately began to have difficulties with the ink clogging.

17. KD immediately set about to discover the nature of the problem and sought technical support from both Jacquard, the company that sold KD the printer, and Tropical.

18. Tropical was able to provide no assistance, while Jacquard worked diligently with KD to determine the nature of the problem and solve it.

19. After substantial analysis KD disassembled the printer and found that the ink clogged the filters, preventing the flow of ink to the print heads.

20. Ultimately, Tropical refused to provide any support because of an outstanding balance for the defective ink sold by Tropical to KD. KD agreed to pay the remainder of the bill but

only after it could get the printing equipment to function properly with the ink purchased from Tropical.

21. Contrary to the representations of Tropical and Hirst, the ink purchased from Tropical did cause clogs and the printing equipment ceased to function because of those ink clogs.

22. Upon information and belief the ink sold by Tropical was not BASF ink as represented by Hirst to KD.

23. The failure of the Mutoh printer prevented KD from meeting its contractual obligations with its customers. Printing jobs that were run with the Tropical ink took substantially longer to complete due to the ink clogs and were not completed in a satisfaction manner. This increased the cost of the dye sublimation process, and reduced the overall throughput capacity of KD. Sublimation jobs that were to be performed by KD now had to be out-sourced. KD has been forced to out-source a substantial number of print jobs which have caused them to lose more than $75,000, to date. These losses are continuing. Additionally, KD's client relationships have been damaged due to the increased time to process and complete the dye sublimation printing.

24. KD was required, due to the failure of the sublimation inks sold by defendants, to use substitute processes which were inferior to dye sublimation in order to meet deadlines agreed to on the expectation of using its Mutoh printer, which it was unable to use.

25. Hirst and Tropical made repeated calls to KD demanding payment. Hirst was told not to call Plaintiffs about this matter. Hirst ignored those requests and continued to make harassing telephone calls. During the course of the telephone calls, Hirst used profane language and made threats against Plaintiffs and their employees.

26. In retaliation against KD for the perceived failure to pay, Hirst began a campaign to ruin KD and Kwait.

27. Upon information and belief, Hirst without the permission of KD went onto a website for World Wide Inks and put defamatory material about KD on the website. Specifically, Hirst wrote "Watch out for the Crooks in this Industry. If you deal with this company make sure you do it on a cash only basis your money is not safe." KD's name address, phone and fax numbers were then listed.

28. Hirst then used the email address of Kwait, president of KD, to disseminate this website's location, its URL, to between twenty and thirty internet search engines. The use of KD's email address has resulted in KD now receiving hundreds of junk email per day.

29. As a result of the defendants unauthorized and unlawful action in using the e-mail address of Kwait and disseminating it to multiple search engines which in turn have disseminated it to multiple e mail advertisers, plaintiffs' electronic mailbox has been overwhelmed by the receipt of approximately 100 e-mails per hour. Plaintiffs have used the e mail address "@KDgraphics.com" for the past eight years. It has become a valuable mark for Plaintiffs. Plaintiffs receive a considerable amount of their business orders at this e-mail address. Customers of the plaintiffs are accustomed to placing orders and communicating with the plaintiffs at this e-mail address. Plaintiffs are distributors for certain products for which this e-mail address is the sole method known to customers for contacting the plaintiffs to placing orders for products distributed by the plaintiffs. As a result of the overwhelming unsolicited and unwanted advertisements inundating plaintiffs' e mail mailbox, the plaintiffs have been required to discontinue the use of their e mail address

substantially injuring the goodwill developed by the plaintiffs over the last eight years and destroying a business asset which the plaintiffs have spent time and money developing over the last eight years.

30. In at least one of the submissions of the URL to an internet search engine, Hirst wrote that the message was sent by "Jeff The Crook Kwait."

31. Kwait, the president of KD, is recognized by the printing industry as an expert. Kwait has published numerous articles concerning specialized printing processes, including fabric printing, fine art printing and industry trends. Additionally he has been invited to speak and has spoken at conferences concerning future developments in printing. Kwait is well known in the printing industry and enjoyed an unblemished reputation until defendants' improper assault on his good name and character.

32. On or about June 13, 2002, Hirst called Plaintiffs and told them to go to the website for World Wide Inks, directing them to the defamatory material he placed on the internet.

33. Upon information and belief, the Defendants are continuing to distribute the World Wide Inks web address to internet search engines which has the effect of generating hundreds of additional email per day to the Plaintiffs' email address. Consequently, the email address has been temporarily shut down.

**COUNT I - VIOLATION OF 15 U.S.C.A.§1125**

34. Plaintiff hereby incorporates paragraph 1-33 as if fully set forth herein.

35. As part of their effort to collect a perceived debt, Defendants have made false or misleading statements about KD and Kwait. To wit defendants have called Kwait a "crook" and on the World Wide Inks website warned others about "crooks in the

industry" and then named KD.  Additionally, Defendants impersonated KD and Kwait when they used their email address to distribute.

36. The internet search engines were deceived in that they believed the e-mails submitted the web address actually came from KD and Kwait.

37. The deception has caused the various internet search engines to send out hundreds of e-mails to Plaintiffs.  Defendants knew that such a substantial number of e-mails would be generated and intended that to happen.  Defendants intended to have the volume of email overload the Plaintiffs email address and destroy that valuable mark and asset of Plaintiffs.

38. Plaintiffs have been injured through the loss of their email.  This is an important method of communication with their customers.  It is used to place orders and transmit data needed to fulfill the orders.  Plaintiffs have spent over eight years establishing the value of the email address and it is a valuable asset and mark.  As a result of defendants actions Plaintiffs have been force to temporarily shut down the email address.  This has caused substantial harm to Plaintiffs and their business.

WHEREFORE, Plaintiffs (1) demand judgment in their favor and against the Defendants, jointly and/or severally in excess of $75,000 plus interest and costs; (2) equitable relief including temporary restraining order and permanent injunctive relief enjoining defendants from further violations of 15 U.S.C. §1125(a) and (d), and any further remedy which this Court deems fair and adequate.

## COUNT II - 73 P.S.§201-2

39. Plaintiff hereby incorporates paragraph 1-38 as if fully set forth herein.

40. As part of their effort to collect a perceived debt, defendants engaged in unfair trade practices as set for in 73 P.S.§201-2(4).

41. Defendants went onto the website of World Wide Inks and disparaged the goods, services or business of KD and Kwait by false and misleading representations of fact.

42. Defendants represented to internet search engines that they were Kwait and KD.

43. Defendants submitted the web address of the World Wide Inks website pretending to be Plaintiffs. Defendants actions are in violation of 73 P.S.§201-2(4)(iii), (v) and (viii).

WHEREFORE, Plaintiffs (1) demand judgment in their favor and against the Defendants, jointly and/or severally in excess of $75,000 plus interest and costs; (2) equitable relief including temporary restraining order and permanent injunctive relief enjoining defendants from further violations of 73 P.S.§201-2(4)(iii), (v) and (viii); and (3) any further remedy which this Court deems fair and adequate.

## COUNT III - BREACH OF CONTRACT

44. Plaintiff hereby incorporates paragraph 1-43 as if fully set forth herein.

45. Plaintiffs and Defendants had an express contract which was entered into by KD based on the representations of Defendants, as set forth herein, that the ink sold by Defendants was of a particular quality, that Defendants would provide technical support and that the ink was manufactured by BASF. The ink was not of the quality represented by Defendants, the Defendants did not provide technical support and the ink was not manufactured by BASF.

46. Plaintiffs have been harmed by Defendants' breach of contract. They were forced to out-source work at increased cost, perform work using inferior printing techniques at a greater

cost and they have expended a great deal of time to try and remedy the problem of the clogging ink. KD's relationships with clients have ben damaged due to the use of inferior printing techniques.

WHEREFORE, Plaintiffs demands judgment in their favor and against the Defendants, jointly and/or severally for damages in excess of $75,000 exclusive of interest and other costs, plus interest and any other remedy this Court determines is appropriate.

## COUNT IV - FRAUD

47. Plaintiff hereby incorporates paragraph 1-46 as if fully set forth herein.

48. Defendants made representations to Plaintiffs about the quality of the ink sold, specifically that the ink sold by Defendants was of a particular quality and would not clog, the that ink was manufactured by BASF and that Defendants would provide technical support.

49. The representations that the ink was manufactured by BASF, that it would not clog and that Tropical provided excellent technical support were material to KD's decision to purchase ink from Tropical.

50. Defendants knew the representations set out in paragraph 39 were false.

51. Plaintiffs justifiably relied on these representations, and purchased ink from Defendants.

52. Plaintiffs have been damaged because in purchasing the inferior quality ink sold to them by Defendants their printers have clogged, work to be performed by Plaintiffs has been delayed, some having to be out-sourced at great expense, and clients may have been disappointed with the quality and the timing of the work performed by Plaintiffs.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and/or severally for damages in excess of $75,000, exclusive of interest and other costs, plus interest and any other remedy this Court determines is appropriate.

### **COUNT V - DEFAMATION**

53. Plaintiff hereby incorporates paragraph 1-52 as if fully set forth herein.

54. Tropical and Hirst made false statements about KD and its president Kwait. Specifically Hirst and Tropical called Plaintiffs "<u>crooks</u>" and stated that they do not pay their bills and that other companies should be wary in dealing with KD and Kwait.

55. The false statements were published in the website of World Wide Inks and in the phoney email sent to disseminate the URL of World Wide Inks to various internet search engines. Defendants did not have Plaintiffs' permission to disseminate this false information nor did Defendants have a privilege which allowed them to publish the defamatory material.

56. Defendants intended to publish these false statements about Plaintiffs so as to create harm Plaintiffs' reputation and business and were at least negligent in doing so.

57. Plaintiffs have suffered harm to their reputations due to the publication of the defamatory material. Plaintiffs continue to suffer harm while the defamatory material is on the website of World Wide Inks, which Defendants have refused to remove.

WHEREFORE, Plaintiffs demand (1) temporary and permanent injunctive relief in their favor and against the Defendants, compelling the Defendants to cease and desist from defaming the Plaintiffs compelling the Defendants to remove the defamatory material from the World Wide Inks website; (2) to cease sending e-mails or other communications impersonating Kwait or KD; and (3) to cease referring to Plaintiffs in defamatory terms. Plaintiffs further request

damages against Defendants, jointly and/or severally in excess of $75,000, exclusive of interest and costs, punitive damages, plus interest and for any other remedies as this Court determines are just and proper.

DATE: June 26, 2002

Respectfully submitted,

STEIN AND SILVERMAN, P.C.

_____
Leon W. Silverman, ID #04244
Andrew Lapat, ID #55673
230 S. Broad Street, 18th Floor
Philadelphia, PA 19102
(215) 985-0255

Counsel for Plaintiffs

G:\KD Graphics\AmendedComplaint.wpd