IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KD Graphics, Inc.<br>1225 Walnut Street<br>Philadelphia, PA,     and<br><br>Jeffrey Kwait<br>1225 Walnut Street<br>Philadelphia, PA<br>          PLAINTIFFS,<br>     v.<br><br>Tropical Graphics, Inc.,<br>4717 NE 12th Avenue<br>Oakland Park, FL    and<br><br>Paul Hirst,<br>4717 NE 12th Avenue<br>Oakland Park, FL,<br>          DEFENDANTS. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action<br>No. 02CV4041<br><br><br><br>Jury Trial Demanded |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

By this application, Plaintiffs, KD Graphics Inc. ("KD") and its president, Jeffrey Kwait ("Kwait"), seek a Temporary restraining Order ("TRO") and thereafter an injunction pursuant to Federal Rule of Civil Procedure Rule 65 to enjoin and restrain defendants Tropical Graphics, Inc. ("Tropical") and its president, Paul Hirst ("Hirst"), from their ongoing and continuing violations of the Lanham Act 15 U.S.C.A. §1225 and Pennsylvania Unfair Business Practices Act, 73 P.S.§201-2(4)(iii), (v) and (viii) designed to ruin Plaintiffs' business.

## I.
## FACTS

Plaintiffs' motion for a TRO is necessitated by defendants transforming an ordinary commercial dispute, into a course of conduct in violation of the Lanham Act and Pennsylvania Unfair Business Practices Act designed to destroy KD's business. In pursuit of a perceived debt of $1300, defendants have engaged in a course of conduct designed to ruin Plaintiffs' business and have cause and continue to cause substantial damage to Plaintiffs. Plaintiffs' need the TRO to preserve the status quo and to prevent the success of defendants' unlawful course of conduct. Specifically, defendants' actions are destroying the value of @KDGraphics.com web address. The address has been used and developed by Plaintiffs for eight years and is a valuable business asset. Defendants actions have forced Plaintiffs to temporarily shut down this email address.

In September 2001, KD made the decision to expand its business into dye sublimation printing onto fabric. (Am. Comp. ¶10[1]) Dye sublimation printing requires specialized printers dedicated to the sublimation process. Using specialized inks, the print goes onto paper and then in a process similar to a heat press is sublimated onto fabric for the finished piece. (Am. Com. ¶11) On or about August 2001, KD purchased specialized sublimation printing equipment manufactured by Mutoh and known as a Falcon printer (hereinafter referred to as "Mutoh"). (Am. Comp. ¶12) KD needed specialized ink for the Mutoh printer. (Am. Comp. ¶13) After investigating its purchasing options, KD decided to purchase ink for the Mutoh printer from Tropical.

---

[1] All references to the Amended Complaint are referred to hereinafter as ("Am. Cmp. ¶")

Tropical's website stated the following: "As the world's largest producer of dye sublimated ink, no one has more experience than we do dealing with ink jet dye sublimation. So you know that if you use our system, you are guaranteed to get the desired results." Additionally the website promised "Great Technical Support" and "No More Clogging." (Am. Comp. ¶14) Hirst on or about August of 2001, in addition to restating the promises contained on the website to Kwait, stated that Tropical sold inks for dye sublimation printers which were manufactured by chemical giant BASF. (Am. Comp. ¶15)  In justified and reasonable reliance on the representations made by Defendants, KD purchased ink from Tropical.

After taking delivery of the ink, KD began to use the ink in the printing equipment.  KD immediately began to have difficulties with the ink clogging.  KD immediately set about to discover the nature of the problem and sought technical support from both Jacquard, the company that sold KD the printer, and Tropical. (Am. Comp. ¶¶16,17)  Tropical provided no assistance, while Jacquard worked diligently with KD to determine the nature of the problem and solve it.  After substantial analysis KD disassembled the printer and found that the ink clogged the filters, preventing the flow of ink to the print heads.  Ultimately, Tropical refused to provide any support because of an outstanding balance for the defective ink sold by Tropical to KD. (Am. Comp. ¶20)

KD agreed to pay the remainder of the bill but only after it could get the printing equipment to function properly with the ink purchased from Tropical. (Am. Comp. ¶20)  The ink sold by Tropical was not BASF ink as represented by Hirst to KD.  The failure of the Mutoh printer prevented KD from meeting its contractual obligations with its customers.  Printing jobs that were run with the Tropical ink took substantially longer to complete due to the ink clogs and

were not completed in a satisfaction manner. This increased the cost of the dye sublimation process, and reduced the overall throughput capacity of KD. Sublimation jobs that were to be performed by KD now had to be out-sourced. KD has been forced to out-source a substantial number of print jobs and these losses are continuing. (Am. Comp. ¶23) Additionally, KD's client relationships have been damaged due to the increased time to process and complete the dye sublimation printing. KD was required, due to the failure of the sublimation inks sold by defendants, to use substitute processes which were inferior to dye sublimation in order to meet deadlines agreed to on the expectation of using its Mutoh printer, which it was unable to use.

<u>Violations of Lanham Act and Pennsylvania Unfair business Practices Act</u>

  Hirst and Tropical made repeated calls to KD demanding payment. Hirst was told not to call Plaintiffs about this matter. Hirst ignored those requests and continued to make harassing telephone calls. During the course of the telephone calls, Hirst used profane language and made threats against Plaintiffs and their employees. In further retaliation against KD for the perceived failure to pay, and in an effort to collect the perceived debt, Hirst commenced a course of conduct designed to destroy KD. Defendants employed the tactic of ruining the @KDGrapics.com web address used by Plaintiff to conduct important communications with its customers. Plaintiffs have used this mark for eight years and it is a valuable business asset.

  Hirst called KD on or about June 13, 2002 to alert Plaintiffs to the material he placed on the website of World Wide Inks. (Am. Comp. ¶32) A true and correct copy of the website is attached hereto as Exhibit 1. Hirst, without the permission of KD, and without privilege, went onto a website for World Wide Inks and put defamatory material about KD on the website. Specifically, Hirst wrote "Watch out for the Crooks in this Industry. If you deal with this

4

company make sure you do it on a cash only basis your money is not safe." KD's name, address and telephone number was then listed. (Am. Comp. ¶27) Hirst then used the email address of Kwait, president of KD, to disseminate this website's location, its URL, to between twenty and thirty internet search engines. (Am. Comp. ¶28)

The use of KD's email address has resulted in KD now receiving thousands of junk email per day. The overflow of junk email has ruined KD's email account. Plaintiffs have used the e mail address @KDgraphics.com for the past eight years. Plaintiffs receive a considerable amount of their business orders at this e-mail address. Customers of the plaintiffs are accustomed to placing orders and communicating with the plaintiffs at this e-mail address. Plaintiffs are distributors for certain products for which this e-mail address is the sole method known to customers for contacting the plaintiffs to placing orders for products distributed by the plaintiffs. As a result of the overwhelming unsolicited and unwanted advertisements inundating plaintiffs' e-mail mailbox, the plaintiffs have been required to discontinue the use of their e mail address substantially injuring the goodwill developed by the plaintiffs over the last eight years and destroying a business asset which the plaintiffs have spent time and money developing over the last eight years. (Am. Comp. ¶29)

In at least one of the submissions of the URL to an internet search engine, Hirst wrote that the message was sent by "Jeff The Crook Kwait." (Am. Comp. ¶30) A true and correct copy of the email is attached hereto as Exhibit 2. Kwait, the president of KD, is recognized by the printing industry as an expert. Kwait has published numerous articles concerning specialized printing processes, including fabric printing, fine art printing and industry trends. Additionally he has been invited to speak and has spoken at conferences concerning future developments in

printing. Kwait is well known in the printing industry and enjoyed an unblemished reputation until defendants' improper assault on his good name and character.

## II.
## TEMPORARY RESTRAINING ORDER IS NECESSARY
## TO PROTECT PLAINTIFFS FROM CONTINUING HARM

Pursuant to Rule 65, Plaintiffs seek a TRO preventing and enjoining defendants from continuing a their efforts to destroy Plaintiffs' business due to a perceived failure to pay a $1300 debt. Such relief is appropriate because money damages alone will not remedy Plaintiffs' injury due to the continuing and ongoing nature of defendants' misconduct.

### A.   Applicable Standards

Rule 65 gives this Court authority to issue a TRO to halt ongoing and continuing harm. The test for granting a TRO is: (1) reasonable probability of success on the merits; (2) Plaintiff will suffer irreparable injury if the TRO is denied; (3) that the defendants will not suffer greater harm if the TRO is issued; and (4) the TRO is in the public interest. Campbell Soup, Inc. v. ConAgra, Inc., 977 F.2d 86, 90-91 (3d Cir. 1992). The instant facts and circumstances show the requirements for a TRO have been satisfied. Additionally, it is appropriate for a court to issue a TRO based o violations of the Lanham Act. Barmasters Bartending School, Inc., v. Authentic Bartending School, Inc., 931 F. Supp. 377 (E.D.Pa. 1996).

### 1.   Plaintiffs Have Established a Probability of Success on the Merits

#### a.   Lanham Act

In their effort to collect a perceived debt, Defendants have engaged in violations of the Lanham Act 15 U.S.C.A. §1225 and Pennsylvania Unfair Business Practices Act, 73 P.S.§201-

2(4)(iii), (v) and (viii) designed to ruin Plaintiffs' business.  Defendants place false information placed on the website of World Wide Inks.  They have then gone about disseminating this information by submitting the web address to at least twenty to thirty internet search engines.  This has been done by impersonating KD and Kwait and through the use of their email.  Defendants intended to place the offending website on as many search engines as possible so it can be viewed by as many people as possible.  Defendants impersonated KD and Kwait so as to make sure that the email address received as much responsive junk email as possible.  This plan has succeeded and the result has been the temporary shut down of the Plaintiffs' email address.  Defendants actions are intended to ruin Kwait and KD and destroy their business name, KD, and marks, KD Graphics Inc., and email address @KDgraphics.com.  Defendants actions have already begun to have the desire impact as Plaintiffs' email address had to be temporarily shut down.

Section 1125(a) of the Lanham act "is traditionally construed broadly, so as to protect the remedial nature of the Act." AT&T v. Winback & Conserve Prog., Inc., 42 F.3d 1421, 1427 (3d Cir. 1994), cert. denied, 115 S.Ct. 1838 (1995).  The Lanham Act protects unregistered marks so long as the public recognizes the mark as identifying the Plaintiffs' services. A.J. Canfield Co. v. Honickman, 808 F.2d 291, 296 (3d Cir. 1986).  Defendants course of conduct has clearly tarnished the value of the KD Graphics name and email though deception.  Both by promulgating a falsehood, that KD and Kwait are crooks, and through impersonating Kwait and KD.

### b. Pennsylvania Unfair Business Practices Act

The Pennsylvania Unfair Business Practices Act 73 P.S. 201-2(4) (iii) prohibits: "causing likelihood of confusion of or misunderstanding as to affiliation, connection or association with,

or certification by another." Subsection (v) prohibits misrepresentation of sponsorship of approval of goods or services and (viii) prohibits "disparaging the goods, services or business of another by false or misleading representation of fact." This is exactly the conduct that defendants have engaged in. Defendants have disparaged the goods or services of KD and Kwait on the World Wide Inks website and in the e-mails they sent purporting to be from Kwait in calling him a "crook." Defendants have misrepresented the origin of goods and services in impersonating KD and Kwait by sending e-mails purporting to be from them. Defendant actions are in clear violation of 73 P.S. 201-2(4) (iii), (v), and (viii).

### 2. **<u>Plaintiffs' Irreparable Harm</u>**[2]

As a matter of law, irreparable harm is presumed once a violation of the Lanham Act is shown. <u>Barmasters</u>, 931 F. Supp. at 386; <u>McNeilab, Inc. v. American Home Products Corp.</u>, 848 F.2d 34, 38 (2d Cir. 1988). Further, each day more people come into contact with the World Wide Inks website and its defamatory material. Defendants are actively submitting the web address to internet search engines in an effort to broaden the scope of those exposed to the defamatory website. Each day, defendants continue to electronically impersonate Kwait and the send e-mails in his name and to refer to him as a crook. Each internet search engine that is contacted generates hundreds of daily e-mails to KD. This has forced KD to temporarily shut down its email address. This creates difficulties in communicating with customers and makes it very difficult to quickly transmit data to be used in print jobs. The value of the KD Graphics and Kwait's name has been devalued and the valuable business asset has been temporarily lost.

---

[2] In support of this Motion for a TRO, Plaintiffs submit the attached Affidavit of Irreparable Harm as Exhibit 3.

Further, each day that defendants wrongdoing is allowed to continue, they continue to impersonate Plaintiffs and distribute their email address maintaining the overflow of e-mails and keeping the mail box closed. Further, Kwait is recognized as an expert in the print industry. He has been asked to speak at seminars and has published a number of articles of various topics in the industry. His good name and reputation are highly valuable and currently both are being sullied by defendants. Every day the value the name KD Graphics is lost due to defendants actions both through the email overflow and the false material on the website of World Wide Inks.

### 3.    Extent to Which Defendants Will Suffer Harm from a TRO

Defendant will not suffer any harm if a TRO is granted in this instance. A TRO will not prevent defendants from conducting legitimate business activities or from pursuing what they believe is a legitimate business debt. However, it will stop defendant from pursuing a course of conduct aimed at destroying Plaintiffs' business. It will force defendants to remove the offending material from the World Wide Inks website and to stop electronically impersonating Kwait and KD and from distributing the email address causing the email box to be overrun by unsolicited mailings. It will prevent them from referring to Kwait as a crook or otherwise impugning their moral character. However, these are not legitimate business practices. Instead these are efforts are contrary to the Lanham Act and Pennsylvania Unfair Business Practices Act, and are designed to ruin Plaintiffs' business.

### 4.    Public Interest

The public interest is in assuring that companies do not engage in a course of conduct designed to ruin others. In pursuit of a perceived debt of $1,300, defendants have lied about KD

and have forced them to temporarily shut down their e-mail. KD has spent eight years to develop their email address and their corporate identity. The public has right to known these assets cannot be attacked and destroyed as defendants are doing in this matter.

### B. A Bond Is Not Necessary

The posting of a bond is not a prerequisite to the issuance of a TRO because the defendants cannot demonstrate any economic harm that will be incurred as a result of the TRO being granted. See, International Contracts Co. v. Vesco, 490 F.2d 1334, 1356 (2d Cir. 1974), cert. denied, 417 U.S. 932 (1974). Compliance with the fair debt Collection Practices Act will require only the expenditure of time, something defendants have already exhibit a willingness to spend.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their (1) ex parte application for a temporary restraining order; and order to show cause why a preliminary injunction should not issue.

Respectfully Submitted,

Date: June 26, 2002

_____
STEIN & SILVERMAN, P.C.
Leon Silverman, Esquire, ID No.: 04244
Andrew Lapat, Esquire, ID No.: 55673
230 South Broad Street, 18th Floor
Philadelphia, PA 19102
215-985-0255
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KD Graphics, Inc.<br>1225 Walnut Street<br>Philadelphia, PA,      and<br><br>Jeffrey Kwait<br>1225 Walnut Street<br>Philadelphia, PA<br>                  PLAINTIFFS,<br>                  v.<br><br>Tropical Graphics, Inc.,<br>4717 NE 12th Avenue<br>Oakland Park, FL    and<br><br>Paul Hirst,<br>4717 NE 12th Avenue<br>Oakland Park, FL,<br>                  DEFENDANTS. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br>Civil Action No.:<br>02CV4041<br><br><br><br><br><br>Jury Trial Demanded |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs hereby move this Honorable Court, pursuant to Rule 65 of the Federal Rules Of Civil Procedure, for the issuance of a Temporary Restraining Order and an Order to Show Cause why a preliminary injunction should not issue. Plaintiffs' seek a temporary restraining order enjoining defendants from their course of conduct in violation of the Lanham Act and Pennsylvania Unfair Business Practices Act. Defendants are to stop making threatening, profane and abusive telephone calls to KD Graphics Inc. or their employees or Jeffrey Kwait; defendants are to immediately remove any reference to KD Graphics Inc., or Kwait from the website of World Wide Inks; and defendants immediately stop electronically impersonating KD or Kwait and stop distributing Plaintiffs' email address. Specifically, defendants will stop sending email

purporting to be from KD or Kwait; and defendants will immediately stop referring to Plaintiffs in defamatory terms. Specifically, defendants will not refer to Plaintiffs as crooks or in any other way question their moral or ethical practices. Plaintiffs hereby incorporate by reference and refer to the Memorandum In Support filed herewith.

                Respectfully Submitted,

Date: June 26, 2002

                _____
                STEIN & SILVERMAN, P.C.
                Leon Silverman, Esquire, ID No.: 04244
                Andrew Lapat, Esquire, ID No.: 55673
                230 South Broad Street, 18th Floor
                Philadelphia, PA 19102
                215-985-0255
                Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KD Graphics, Inc. <br> 1225 Walnut Street <br> Philadelphia, PA,   and <br><br> Jeffrey Kwait <br> 1225 Walnut Street <br> Philadelphia, PA <br> PLAINTIFFS, <br> v. <br><br> Tropical Graphics, Inc., <br> 4717 NE 12th Avenue <br> Oakland Park, FL   and <br><br> Paul Hirst, <br> 4717 NE 12th Avenue <br> Oakland Park, FL, <br> DEFENDANTS. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil Action <br> No. 02CV4041 <br><br><br> Jury Trial Demanded |

**[PROPOSED] <u>ORDER</u>**

**AND NOW**, this ___ th day of June 2002, upon consideration of Plaintiff's Motion for Temporary Restraining Order Compel and any response thereto, it is hereby **ORDERED** that Plaintiffs' Motion is **GRANTED**. It is further ordered as follows:

1. Defendants to cease violations of the Lanham Act and Pennsylvania Unfair Business Practices Act; and

2. Stop making threatening, profane and abusive telephone calls to KD Graphics Inc. or their employees or Jeffrey Kwait; and

3. Defendants will immediately remove any reference to KD Graphics Inc., or Kwait from the website of World Wide Inks; and

4. Defendants immediately stop electronically impersonating KD or Kwait. Specifically, defendants will stop sending email purporting to be from KD or Kwait; and

5. Defendants will immediately stop referring to Plaintiffs in defamatory terms. Specifically, defendants will not refer to Plaintiffs as crooks or in any other way question their moral or ethical practices.

**BY THE COURT:**

_____

J.