# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KD GRAPHICS, INC. and       :
JEFFREY KWAIT,           :
                      :
  Plaintiffs,             :
                      :
          vs.           :     **Civil Action No. 02-CV-4041**
                      :
TROPICAL GRAPHICS, INC. and     :     **JURY TRIAL DEMANDED**
PAUL HIRST,             :
                      :
  Defendants.           :

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFFS' AMENDED COMPLAINT

Defendants Tropical Graphics, Inc. ("Tropical Graphics") and Paul Hirst ("Hirst") (collectively, "Defendants") hereby respond to Plaintiffs' Amended Complaint as follows:

1.  On information and belief, admitted.

2.  On information and belief, admitted that Jeffrey Kwait ("Kwait") has a business address of 1225 Walnut Street, Philadelphia, PA. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 2 of the Amended Complaint, and those allegations are therefore deemed denied.

3.  Admitted.

4.  Admitted.

### JURISDICTION

5.  The allegations set forth in paragraph 5 are conclusions of law that need not be admitted or denied, and are therefore deemed denied.

6.  The allegations set forth in paragraph 6 are conclusions of law that need not be admitted or denied, and are therefore deemed denied.

7.     The allegations set forth in paragraph 7 are conclusions of law that need not be admitted or denied, and are therefore deemed denied.

8.     The allegations set forth in paragraph 8 are conclusions of law that need not be admitted or denied, and are therefore deemed denied.

9.     The allegations set forth in paragraph 9 are conclusions of law that need not be admitted or denied, and are therefore deemed denied.

## FACTS

10.     Defendants lack sufficient knowledge or information to admit or deny the allegations set forth in paragraph 10 of the Amended Complaint, and those allegations are therefore deemed denied.

11.     Denied as stated.  As a further response, sublimation is a process whereby a special ink passes through an ink jet printer onto regular paper.  Then, the printed image is heat transferred onto a substrate.

12.     Defendants lack sufficient knowledge or information to admit or deny the allegations set forth in paragraph 12 of the Amended Complaint, and those allegations are therefore deemed denied.

13.     Admitted in part, denied in part.  Defendants admit only that KD Graphics, Inc. ("KD Graphics") purchased ink from Tropical Graphics.  Defendants lack sufficient knowledge or information to admit or deny the remainder of the allegations set forth in paragraph 13 of the Amended Complaint, and those allegations are therefore deemed denied.

14.     Admitted in part, denied in part. Tropical Graphics' website states the following, among other things:  "In this section of our site, you are provided with information on large & small format sublimation printing.  As the world's largest producer of dye sublimated product, no one has more experience than we do dealing with ink jet dye sublimation.  So you know that if you use our system, you are guaranteed to get the desired results. • No More Clogging • The Most Accurate Color Correction Software On The Market • Hix Heat Presses • Rollo Rotary Transfer Presses • Epson Printers •Ultra Low Costs Per Square Foot • Great Technical Support."

The text appearing on the website is a writing that speaks for itself, and Plaintiffs' characterizations thereof are denied. To the extent the allegations set forth in paragraph 14 of the Amended Complaint may be deemed conclusions of law, those allegations need not be admitted or denied, and are therefore deemed denied.

15.    Admitted in part, denied in part. Defendants admit that Hirst and Kwait spoke in or about August 2001. Defendants further admit that Hirst advised Kwait in or about that time that Tropical Graphics sells inks manufactured by BASF for dye sublimation printers. By way of further response, Hirst also advised Kwait that Tropical Graphics sells its own house brand of inks for dye sublimation printers. Defendants deny the remaining allegations set forth in paragraph 15 of the Amended Complaint.

16.    Admitted in part, denied in part. Defendants admit only that KD Graphics purchased ink from Tropical Graphics in August, September, and October, 2001 as well as February, 2002. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 16 of the Amended Complaint, and those allegations are therefore deemed denied.

17.    Admitted in part, denied in part. Defendants admit only that KD Graphics requested technical support from Tropical Graphics and that such support was provided, notwithstanding the fact that KD Graphics had declined to purchase a contract for technical support services from Tropical Graphics, which Tropical Graphics typically offers to its customers, and the fact that KD Graphics never compensated Tropical Graphics for the technical support it received. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 17 of the Amended Complaint, and those allegations are therefore deemed denied.

18.    Defendants deny the allegations in paragraph 18 of the Amended Complaint pertaining to Tropical Graphics. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 18 of the Amended Complaint, and those allegations are therefore deemed denied.

19.    Defendants lack sufficient knowledge or information to admit or deny the allegations set forth in paragraph 19 of the Amended Complaint, and those allegations are therefore deemed denied.

20.    Denied.

21.    Denied.

22.    Admitted in part, denied in part.  Defendants admit that the ink KD Graphics purchased from Tropical Graphics was not BASF ink.  Defendants deny that they ever represented to KD Graphics that they were selling BASF ink to KD Graphics.  By way of further response, at no time did KD Graphics ever order BASF ink from Tropical Graphics.  At all times, KD Graphics and Kwait were advised, and fully understood, that the ink KD Graphics was purchasing from Tropical Graphics was not BASF ink, but rather was Tropical Graphics' own house brand ink, ArTainium ink.  Defendants deny the remaining allegations set forth in paragraph 22 of the Amended Complaint.

23.    Defendants lack sufficient knowledge or information to admit or deny the allegations set forth in paragraph 23 of the Amended Complaint, and those allegations are therefore deemed denied.

24.    Defendants lack sufficient knowledge or information to admit or deny the allegations set forth in paragraph 24 of the Amended Complaint, and those allegations are therefore deemed denied.

25.    Admitted in part, denied in part.  Defendants admit only that Defendants contacted KD Graphics to inquire about outstanding invoices and KD Graphics' account balance that KD Graphics failed, refused, and/or was unable to pay.  Defendants deny the remaining factual allegations set forth in paragraph 25 of the Amended Complaint.  To the extent any of the allegations in paragraph 25 are construed as legal allegations, they are denied as conclusions of law.

26.    Denied.

27.    Denied.

28.     The first sentence in paragraph 28 of the Amended Complaint is denied.  The Defendants are without knowledge or sufficient information to deny or admit the remaining allegations set forth in paragraph 28 of the Amended Complaint, and those allegations are therefore deemed denied.

29.     To the extent the allegations set forth in paragraph 29 of the Amended Complaint constitute conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 29 of the Amended Complaint, and those allegations are therefore deemed denied.

30.     Denied.

31.     To the extent the allegations set forth in paragraph 31 of the Amended Complaint constitute conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 31 of the Amended Complaint, and those allegations are therefore deemed denied.

32.     Denied.

33.     Defendants deny that they are distributing the Worldwide Inks web address to internet search engines. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 33 of the Amended Complaint, and those allegations are therefore deemed denied.

## COUNT I

34.     Defendants incorporate their responses to paragraphs 1 through 33 as if set forth in full herein.

35.     Admitted in part, denied in part.  After not getting paid for services and products tendered to KD Graphics, an agent of Tropical Graphics posted the following information on the World Wide Inks web-site:  "Watch out for the crooks in this industry.  If you deal with this company make sure you do it on a cash only basis your money is not safe."  The individual also

posted the name, address, telephone, and fax number for KD Graphics. To the extent the allegations set forth in paragraph 35 of the Amended Complaint constitute conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied. As further response, the third sentence in paragraph 35 is an incomplete sentence. The remainder of the allegations in paragraph 35 of the Amended Complaint are denied.

36.    Defendants lack sufficient knowledge or information to admit or deny the allegations set forth in paragraph 36 of the Amended Complaint, and those allegations are therefore deemed denied.

37.    To the extent the allegations set forth in paragraph 37 of the Amended Complaint are conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied. Defendants deny the allegations regarding their purported knowledge and intent set forth in the second and third sentences of paragraph 37. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 37 of the Amended Complaint, and those allegations are therefore deemed denied.

38.    To the extent the allegations set forth in paragraph 38 of the Amended Complaint are conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 38 of the Amended Complaint, and those allegations are therefore deemed denied.

WHEREFORE, Defendants request that this Court enter an Order denying Plaintiffs' demands for relief, dismissing Plaintiffs' Amended Complaint with prejudice, and awarding Defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this Court may deem proper.


## COUNT II

39.    Defendants incorporate their responses to paragraphs 1 through 38 as if set forth in full herein.

40.    Denied as conclusions of law.

41.    Denied as conclusions of law.

42.    Denied.

43.    Defendants deny the allegations set forth in the first sentence of paragraph 43 of the Amended Complaint.  The remaining allegations in paragraph 43 constitute conclusions of law that need not be admitted or denied, and that are therefore deemed denied.

WHEREFORE, Defendants request that this Court enter an Order denying Plaintiffs' demands for relief, dismissing Plaintiffs' Amended Complaint with prejudice, and awarding Defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this Court may deem proper.

## COUNT III

44.    Defendants incorporate their responses to paragraphs 1 through 43 as if set forth in full herein.

45.    The allegations in paragraph 45 constitute conclusions of law that need not be admitted or denied, and that are therefore deemed denied.  By way of further answer, denied.

46.    To the extent the allegations set forth in paragraph 46 of the Amended Complaint are conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 46 of the Amended Complaint, and those allegations are therefore deemed denied.

WHEREFORE, Defendants request that this Court enter an Order denying Plaintiffs' demands for relief, dismissing Plaintiffs' Amended Complaint with prejudice, and awarding Defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this Court may deem proper.

## COUNT IV

47.    Defendants incorporate their responses to paragraphs 1 through 46 as if set forth in full herein.

48.    To the extent the allegations set forth in paragraph 48 of the Amended Complaint are conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied.  Defendants deny the remaining allegations set forth in paragraph 48 of the Amended Complaint.

49.    To the extent the allegations set forth in paragraph 49 of the Amended Complaint are conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied.  Defendants deny the remaining allegations set forth in paragraph 49 of the Amended Complaint.

50.    Denied.  As a further response, paragraph 50 cites paragraph 39, which itself references paragraphs 1 through 38.  Thus, paragraph 50 is incomprehensible.

51.    Defendants admit only that KD Graphics purchased ink from Tropical Graphics. Defendants deny the remaining allegations set forth in paragraph 51 of the Amended Complaint.

52.    To the extent the allegations set forth in paragraph 52 of the Amended Complaint are conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 52 of the Amended Complaint, and those allegations are therefore deemed denied.

WHEREFORE, Defendants request that this Court enter an Order denying Plaintiffs' demands for relief, dismissing Plaintiffs' Amended Complaint with prejudice, and awarding Defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this Court may deem proper.

## COUNT V

53.    Defendants incorporate their responses to paragraphs 1 through 52 as if set forth in full herein.

54.    Admitted that an agent of Tropical Graphics referred to Kwait as "Jeff The Crook Kwait" on at least one occasion.  It is also admitted that, after not getting paid for services and products tendered to KD Graphics, an agent of Tropical Graphics posted the following

information on the World Web Inks web-site: "Watch out for the crooks in this industry. If you deal with this company make sure you do it on a cash only basis your money is not safe." The individual also posted the name, address, telephone, and fax number for KD Graphics. The remainder of the statements and legal allegations in paragraph 54 of the Amended Complaint are denied.

55.    Admitted that an agent of Tropical Graphics sent the web site address of World Wide Inks to at least one internet search engine. It is also admitted that, after not getting paid for services and products tendered to KD Graphics, an agent of Tropical Graphics posted the following information on the World Web Inks web-site: "Watch out for the crooks in this industry. If you deal with this company make sure you do it on a cash only basis your money is not safe." The individual also posted the name, address, telephone, and fax number for KD Graphics. The remainder of the statements and legal allegations in paragraph 55 of the Amended Complaint are denied.

56.    Denied.

57.    To the extent the allegations set forth in paragraph 57 of the Amended Complaint are conclusions of law, those allegations need not be admitted or denied and are therefore deemed denied. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 57 of the Amended Complaint, and those allegations are therefore deemed denied.

WHEREFORE, Defendants request that this Court enter an Order denying Plaintiffs' demands for relief, dismissing Plaintiffs' Amended Complaint with prejudice, and awarding Defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this Court may deem proper.

## **AFFIRMATIVE DEFENSES**

58.    Any and all claims set forth in Plaintiffs' Amended Complaint fail to state any claims upon which relief can be granted.

59.    Plaintiffs' demands for equitable relief are moot, because the acts complained of are not occurring.

60.    Count III of the Complaint fails to set forth the elements necessary to state a cognizable breach of contract claim.

61.    Defendants reserve their right to plead the deficiencies in the form and substance of Plaintiffs' Amended Complaint at any time, including but not limited to, on a motion for judgment on the pleadings, a motion for judgment as a matter of law, and at trial.

62.    Defendants reserve their right to file an action for wrongful use of civil proceedings upon termination of this litigation in their favor.  Defendants reserve their right to seek sanctions for frivolous litigation and to raise this as a defense.

63.    Plaintiffs failed to properly effect service of process on defendant Hirst.

64.    Plaintiffs' claims are barred by the doctrines of estoppel, laches, unclean hands, and/or other equitable doctrines.

65.    Any damages that Plaintiffs purportedly sustained were the result solely of acts, omissions, and/or warranties made by presently unnamed parties.   Defendants reserve their right to assert claims for indemnification and/or contribution against presently unnamed parties.

66.    Plaintiffs' own acts and/or omissions caused any damages purportedly sustained by Plaintiffs.

67.    Plaintiffs failed to mitigate their damages, if any exist.

68.    Defendants acted in good faith at all times.

69.    None of the statements allegedly made by Defendants was defamatory as a matter of law.

70.    Plaintiffs' defamation count is barred because all information communicated by Defendants, if any, to any third party person regarding Plaintiffs was true.

71.    Plaintiffs' defamation count against Defendants is barred by the conditional privilege afforded to publications made in good faith for a justifiable purpose.  This defense does not waive Defendants' defense of truth.

72.    Plaintiffs' defamation count against Defendants must fail because there is no proximate cause between any claimed actions and any of Plaintiffs' alleged damages.

73.    Plaintiffs' defamation count, insofar as it is against Tropical Graphics, must fail because Plaintiffs did not allege that anyone acting as an agent of Tropical Graphics made defamatory statements.

74.    Plaintiffs' defamation count, insofar as it is against Hirst, must fail because Hirst did not make any defamatory statements.

75.    Plaintiffs' alleged damages, if any, were not caused by Defendants, but by an independent, intervening cause.

76.    There is no proximate cause between any claimed actions or failure to act on the part of Defendants and any alleged damages, injuries or losses claimed by Plaintiffs.

77.    At all times, Defendants complied with any and all applicable statutory provisions.

78.    Defendants reserve and assert herein by reference all of the defenses available to them in the statutes relied upon by the Plaintiffs in their Complaint.  This includes, but is not limited to, restrictions on the amount or nature of recovery available to the Plaintiffs, if any.

79.    Defendants did not engage in any extreme or outrageous conduct.

80.    This Court lacks personal jurisdiction over Tropical Graphics and/or Hirst.

81.    This forum is the improper venue for this action.

82.    Defendants Tropical Graphics and Hirst reserve their right to raise additional affirmative defenses as they may become available and apparent during discovery.

WHEREFORE, Defendants deny any and all liability to the Plaintiffs and demand that judgment be entered in their favor against the Plaintiffs together with cost of suit and attorneys' fees.

## COUNTERCLAIMS

### Parties

1.       Counterclaim Plaintiff Tropical Graphics, Inc. ("Tropical Graphics") is a Florida corporation with its principal place of business located at 4717 NE 12th Avenue, Oakland Park, FL 33334-4801.  Tropical Graphics is an arts and graphical design company.

2.       On information and belief, counterclaim defendant KD Graphics, Inc. ("KD Graphics") is a Pennsylvania corporation with an address of 1225 Walnut Street, Philadelphia, PA.

3.       On information and belief, counterclaim defendant Jeffrey Kwait ("Kwait") is a Pennsylvania citizen with a business address of 1225 Walnut Street, Philadelphia, PA.  Kwait is the President and Chief Executive Officer of KD Graphics.  ("KD Graphics" shall hereinafter refer to KD Graphics and Jeffrey Kwait, collectively, unless they are specifically referred to in their individual capacities).

### Jurisdiction and Venue

4.       This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  The Court also has supplemental jurisdiction over all of the causes of action in the counterclaim pursuant to 28 U.S.C. § 1367.

5.       Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claim occurred here.  Venue is also proper here, because defendants reside in this judicial district.

### Background

6.       Tropical Graphics sells an array of graphic design products and services to more than 1500 satisfied customers world-wide.

7.       One of the services that Tropical Graphics offers to its customers is a process known as "sublimation," through which art images may be transferred onto a variety of surface types.

8.      Sublimation is a process whereby special ink passes through an ink jet printer onto regular paper.  Then, the printed image is heat transferred onto a substrate.

9.      In addition to offering sublimation to its customers, Tropical Graphics also sells inks and printers.  Further, it negotiates and services support contracts for printers.

10.     Tropical Graphics sells different kinds of ink.  One of the ink product lines it sells is a house brand developed by Tropical Graphics, which is sold under the name "ArTainium."

11.     Tropical Graphics' ArTainium ink is widely recognized among Tropical Graphics' customers and in the industry to be a high quality product.  Indeed, in 2000, Tropical Graphics received the Personalized & Idea Products Association Product of the Year Award for its ArTainium ink.  The Personalized & Idea Products Association is an awards and engraving publication.

12.     Paul Hirst ("Hirst"), the President of Tropical Graphics, is recognized in the graphic art industry as an expert and a leader in the use of sublimation.

13.     KD Graphics was a customer of Tropical Graphics, beginning in the summer of 2001.

14.     While KD Graphics at first seemed to be an honest customer, KD Graphics soon embarked on a scheme to avoid paying Tropical Graphics for inks purchased and services rendered.  Further, after several months of offering empty promises to pay for goods and services tendered by Tropical Graphics, KD Graphics began to harass Tropical Graphics and tried to intimidate Tropical Graphics, as set forth in more detail below.  In doing so, KD Graphics disrupted the business of Tropical Graphics, causing it to lose business and suffer other damages, as set forth below.

## Jeffrey Kwait's and KD Graphics' Scheme

15.     In the summer of 2001, KD Graphics first contacted Tropical Graphics to obtain prices for a sublimation transfer system known as a "Mutoh Falcon Printer" and sublimation dyes.

16.     KD Graphics purchased a Mutoh Falcon Printer from an entity other than Tropical Graphics. But, on or about August 21, 2001, KD Graphics placed its first order for sublimation ink from Tropical Graphics. KD Graphics purchased Tropical Graphics' award-winning ArTainium ink. At the time, Tropical Graphics offered two types of ink, ArTainium ink and a BASF brand of ink. KD Graphics was aware of the different types of inks and opted to purchase the ArTainium ink.

17.     Tropical Graphics offered a support contract to KD Graphics for the newly purchased Mutoh Falcon Printer. Tropical Graphics regularly offers support contracts to its customers.

18.     Against the strong advice of Tropical Graphics, KD Graphics refused to purchase a support contract from Tropical Graphics.

19.     After the initial purchase of ArTainium ink, KD Graphics ordered ArTainium ink from Tropical Graphics on three more occasions during August, September and October, 2001 and on one occasion in February 2002, for a total of five purchases of ArTainium ink. In or about September 2001, KD Graphics also ordered from Tropical Graphics a bulk ink delivery system.

20.     By October 4, 2001, KD Graphics had incurred a bill totaling $5,115.00 for ArTainium ink and the bulk ink delivery system.

21.     During August, September and October 2001, KD Graphics on several occasions promised to immediately pay this outstanding debt to Tropical Graphics.

22.     Finally, on October 29, 2001, over two months after placing its first order for ArTainium ink from Tropical Graphics, KD Graphics made a payment toward its $5,115.00 account balance. Over the subsequent months, KD Graphics made a few more payments against the outstanding debt, but it never reduced the balance to zero, despite its continuing promises to do so. Indeed, to this day, KD Graphics still owes Tropical Graphics $1,933.17 plus interest, for the ArTainium ink and the bulk ink delivery system it purchased.

23.     In addition to ordering ArTainium ink and a bulk ink delivery system that it never paid for, KD Graphics sought technical and support advice from Tropical Graphics, even though it had refused to purchase a written support contract in August of 2001.

24.     From the beginning, it was apparent that Kwait and other employees of KD Graphics lacked the skill necessary to operate a Mutoh Falcon Printer, or otherwise were careless and negligent in doing so.  Kwait admitted to Tropical Graphics that, on multiple occasions, KD Graphics allowed ink to sit in the Mutoh Falcon Printer for lengthy periods of time.  In the early fall of 2001, soon after purportedly buying the Mutoh Falcon Printer, KD Graphics told Tropical Graphics that its business had suffered a down turn and that it had left the printer standing with ink in it for over two months.  Tropical Graphics responded that this practice could damage the printer.  To help foster business goodwill, Tropical Graphics sent KD Graphics a flushing solution at no charge to clean the printer as a precautionary measure.

25.     In February 2002, KD Graphics advised Tropical Graphics that it had again allowed the Mutoh Falcon Printer to sit idle for an extended period of time with ink in it.  Tropical Graphics advised KD Graphics to purchase another flushing solution.

26.     Then, in the spring of 2002, KD Graphics telephoned Tropical Graphics and stated that the printer was malfunctioning.  KD Graphics had once more allowed the printer to sit unused, and now the printer was purportedly producing unwanted bands of ink.  KD Graphics proceeded to call Tropical Graphics' technical support department repeatedly.  For a second time, and even though the printer would apparently need attention right away, Tropical Graphics again offered KD Graphics a support contract.  Tropical Graphics also advised KD Graphics to call a professional engineer to service the printer.

27.     KD Graphics refused to sign any written support contract, but nevertheless disrupted Tropical Graphics' business operations with numerous lengthy telephone calls with technical questions.

28.     Further, KD Graphics never hired an engineer to service its printer.  Instead, Kwait told Tropical Graphics' President, Paul Hirst, that he was an "expert" and could fix the

Mutoh Falcon Printer himself.  On information and belief, Kwait disassembled the printer and proceeded to improperly replaced the printer's dampers.  On information and belief, Kwait's careless do-it-yourself repair job caused damage to the printer.

29.     Dampers in sublimation printers need to be periodically replaced.  This operation requires a trained engineer experienced with servicing such printers.

30.     Despite purchasing enough ink to print thousands of square feet of product, KD Graphics told Tropical Graphics that it had never changed the dampers in its Mutoh Falcon Printer prior to April 2002.  Instead of hiring a skilled engineer to change the dampers, on information and belief, Kwait or another agent of KD Graphics tried to fix the printer by himself, against the firm advice of Tropical Graphics.

31.     Thus, on information and belief, KD Graphics – not ink – damaged the printer. On information and belief, KD Graphics damaged the printer by trying to replace the dampers without the help of an engineer.  On information and belief, KD Graphics damaged the printer by allowing it to sit unused for months at a time.  KD Graphics' claim that the award-winning ArTainium ink caused damage is entirely bogus -- it is nothing more than a frivolous allegation KD Graphics conjured to avoid paying its bills.

32.     At all times during the business relationship, Tropical Graphics and its employees, including Hirst, acted with good faith toward KD Graphics.  Indeed, Tropical Graphics went out of its way to try to help KD Graphics with services and advice for which it never received payment.

33.     In February 2002, after KD Graphics used up all of its ArTainium ink, much of which it had not paid for, KD Graphics asked Tropical Graphics to handle a rush banner project. Tropical Graphics did so.

34.     Again, in April 2002, Tropical Graphics handled another emergency project for KD Graphics, at KD Graphics' request.

35.    Finally, in April 2002, after many months of hearing empty promises that the outstanding account would soon be settled, Tropical Graphics notified KD Graphics that it would send no more ink unless KD Graphics reduced its outstanding balance to zero.

36.    From August of 2001 to the beginning of April 2002, KD Graphics never complained about Tropical Graphics' ArTainium ink.  To the contrary, it praised the ink and submitted several orders.

37.    Only after Tropical Graphics notified KD Graphics that it would get no more ink unless it paid the balance it owed, KD Graphics started blaming the problems with the Mutoh Falcon Printer on the ArTainium ink.

38.    Despite its claims that the ArTainium ink caused problems with its printer, KD Graphics never returned any of the ArTainium ink nor did it ever seek a refund for the ArTainium ink.

39.    Kwait's unreasonable conduct has escalated since April 2002.  Kwait has telephoned Tropical Graphics and threatened to disparage the good name and reputation of Tropical Graphics and Hirst at industry conferences and workshops.

40.    Kwait made these threats to try to intimidate Tropical Graphics and Hirst, and to attempt to evade KD Graphics' debt.

41.    For a period of several days in or about June 2002, Tropical Graphics' fax machine was flooded with hundreds or thousands of blank faxes.  On information and belief, KD Graphics sent the faxes in an attempt to harass, inconvenience and intimidate Tropical Graphics.

42.    KD Graphics' tactics tied up Tropical Graphics' fax machine for days.  Tropical Graphics receives many of its orders and conducts much of its business via facsimile.  Without a functional fax machine, Tropical Graphics lost product orders and business.

## COUNT I

## BREACH OF CONTRACT

## TROPICAL GRAPHICS V. KD GRAPHICS

43.    Tropical Graphics incorporates by reference the allegations of paragraphs 1 to 42 of this Counterclaim as if set forth in full herein.

44.    KD Graphics contracted with Tropical Graphics for the purchase of ArTainium inks and a bulk ink delivery system.

45.    On five different occasions in 2001 and 2002, KD Graphics agreed to purchase ArTainium inks for a particular price from Tropical Graphics.  In or about September 2001, KD Graphics agreed to purchase a bulk ink delivery system for a particular price from Tropical Graphics.

46.    Tropical Graphics shipped ArTainium ink and the bulk ink delivery system to KD Graphics in response to KD Graphics' orders.

47.    The agreements between Tropical Graphics and KD Graphics for the purchases of ArTainium ink and the bulk ink delivery system are valid and enforceable contracts supported by consideration.

48.    KD Graphics has a duty to pay Tropical Graphics for the ArTainium ink and the bulk ink delivery system.

49.    KD Graphics refused to pay the total amount it owed Tropical Graphics for the ArTainium ink and the bulk ink delivery system.

50.    KD Graphics breached its contractual duty to pay Tropical Graphics for the ArTainium ink and the bulk ink delivery system.

51.    Due to KD Graphics' failure to pay Tropical Graphics for the ArTainium ink and the bulk ink delivery system, Tropical Graphics has suffered and continues to suffer actual damages, in the amount of $1,933.17 plus interest, for which KD Graphics is liable.

WHEREFORE, Tropical Graphics, demands judgment against KD Graphics for damages in the amount of $1,933.17, together with interest, costs, attorneys' fees, and any other relief that the Court deems just and proper.

## COUNT II

## BREACH OF IMPLIED CONTRACT

## TROPICAL GRAPHICS V. KD GRAPHICS

52.    Tropical Graphics incorporates by reference the allegations of paragraphs 1 to 51 of this Counterclaim as set forth at length herein.

53.    In addition to its purchases of ArTainium ink and a bulk ink delivery system from Tropical Graphics, on several occasions KD Graphics asked Tropical Graphics to undertake particular graphics projects on a rush basis to fulfill KD Graphics' customers' orders.

54.    Tropical Graphics agreed to undertake the graphics projects as requested, and completed those projects in a timely and satisfactory manner.

55.    KD Graphics failed to pay for these services provided by Tropical Graphics.

56.    The services provided by Tropical Graphics for KD Graphics created an implied contract with valid consideration.

57.    KD Graphics still owes Tropical Graphics $348.17 for the graphics projects that Tropical Graphics completed on its behalf.

58.    In addition to the allegations in paragraphs 53 to 57 related to the graphics projects, KD Graphics is also liable for demanding and receiving technical support services from Tropical Graphics and never paying for such services.

59.    Despite refusing to sign a written support contract, KD Graphics telephoned Tropical Graphics and sought technical support and advice regarding its Mutoh Falcon Printer.

60.    Tropical Graphics and its agents expended time and effort responding to KD Graphics' numerous inquiries and telephone calls.

61.    The technical support services provided by Tropical Graphics to KD Graphics at the request of KD Graphics created an implied contract with valid consideration.

62.    KD Graphics is liable to Tropical Graphics for the value of the technical services referenced in paragraphs 58 to 61.

WHEREFORE, Tropical Graphics demands judgment against KD Graphics for an amount to be determined at trial, together with interest, Court costs attorneys' fees, and any other relief that the Court deems just and proper.

## COUNT III

## UNJUST ENRICHMENT/QUANTUM MERUIT

## TROPICAL GRAPHICS V. KD GRAPHICS

63.    Tropical Graphics incorporates by reference the allegations of paragraphs 1 to 62 of this Counterclaim as set forth at length herein.

64.    To the extent that the acts complained of in Count II did not create an implied contract, KD Graphics is nevertheless liable at quantum meruit for its unjust enrichment at the expense of Tropical Graphics.

65.    As explained above, on several occasions, KD Graphics asked Tropical Graphics to undertake particular graphics projects on a rush basis to fulfill KD Graphics' customers' orders.

66.    Tropical Graphics agreed to undertake these projects as requested, and completed those graphics projects in a timely and satisfactory manner.

67.    KD Graphics failed to pay for these services provided by Tropical Graphics.

68.    KD Graphics still owes Tropical Graphics $348.17 for the graphics projects that Tropical Graphics completed on its behalf.

69.    KD Graphics was unjustly enriched by receiving but failing to pay for these services, and is liable to Tropical Graphics for the value of the services.

70.    In addition to the allegations in paragraphs 65 to 69 related to graphics projects, KD Graphics is also liable at quantum meruit for receiving technical support services from Tropical Graphics and never paying for such services.

71.    Despite refusing to sign a written support contract, KD Graphics telephoned Tropical Graphics and sought technical support and advice regarding its Mutoh Falcon Printer.

72.    Tropical Graphics and its agents expended time and effort responding to KD Graphics' numerous inquiries and telephone calls.

73.    KD Graphics never paid for the technical services and was therefore unjustly enriched at the expense of Tropical Graphics.

74.    KD Graphics is liable at quantum meruit to Tropical Graphics for the value of the technical support services referenced in paragraphs 70 to 73.

WHEREFORE, Tropical Graphics demands judgment against KD Graphics for an amount to be determined at trial, together with interest, Court costs, attorneys' fees, and any other relief that the Court deems just and proper.


## COUNT IV

## ALTER-EGO BREACH OF CONTRACT AND BREACH OF IMPLIED CONTRACT

## TROPICAL GRAPHICS V. KWAIT

75.    Tropical Graphics incorporates by reference the allegations of Paragraphs 1 to 74 of this Counterclaim as set forth at length herein.

76.    On information and belief, Kwait is the alter-ego of KD Graphics.

77.    As the alter ego of KD Graphics, Kwait is liable for its debts, obligations, and the damages it caused.

78.    Kwait is personally liable to Tropical Graphics for the breach of contract set forth in Count I, the breach of implied contract set forth in Count II, the unjust enrichment set forth in Count III, and any other damages and injuries sustained by Tropical Graphics as a result of KD Graphics' conduct and the conduct of KD Graphics' agents.

WHEREFORE, Tropical Graphics demands judgment against Kwait for damages in an amount to be determined at trial, together with interest, costs, attorneys' fees, and any other relief that the Court deems just and proper.

## COUNT V

## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

## TROPICAL GRAPHICS V. KD GRAPHICS AND KWAIT

79.     Tropical Graphics incorporates by reference the allegations of paragraphs 1 to 78 of this Counterclaim as set forth at length herein.

80.     As stated more fully above, Tropical Graphics has business and contractual relationships with over 1500 customers.

81.     Tropical Graphics receives many of its orders for products and services by facsimile.

82.     For a period of several days in or about June 2002, Tropical Graphics' fax machine became flooded with hundreds or thousands of blank faxes.

83.     As a result of receiving these hundreds of faxes, Tropical Graphics' fax machine was unable to receive orders for services and products.

84.     Based on the number of orders that it regularly receives by facsimile, Tropical Graphics lost numerous business orders during this time period.

85.     In addition to losing orders, the loss of its fax machine disrupted the business operations of Tropical Graphics, generally, and caused damage to existing relationships between Tropical Graphics and its customers.

86.     On information and belief, these hundreds or thousands of blank faxes were sent by KD Graphics.

87.     The actions of KD Graphics referred to in paragraph 86 were improper and unprivileged.

88.     The actions of KD Graphics referred to in paragraph 86 were intentional.

89.     By sending the hundreds or thousands of blank faxes, KD Graphics acted with an intent to harm the existing and prospective business and contractual relations of Tropical Graphics and its customers and business partners.

90.     In addition to flooding the fax machine, Kwait disrupted the business of Tropical Graphics by threatening to defame the company and Hirst.  In the spring of 2002, Kwait telephoned Tropical Graphics and threatened to intentionally and maliciously defame Tropical Graphics, Hirst, and Tropical Graphics' products at industry conferences.

91.     Kwait threatened to make false statements about Hirst and about Tropical Graphics and its products, because KD Graphics was unable to or refused to pay its outstanding bills, and because he wanted to intimidate and harass Tropical Graphics and Hirst.

92.     Kwait was aware that such acts of defamation described in paragraphs 90 and 91 would be improper and unprivileged.

93.     Kwait was aware that such acts of defamation described in paragraphs 90 and 91 would harm existing and prospective business relationships between Tropical Graphics and its customers.

94.     Kwait was aware that his slanderous and/or libelous remarks would be false and/or that he would make them with a reckless disregard for the truth.

95.     Kwait's threats were extreme and outrageous.

96.     As a result of Kwait's threats to unlawfully and unjustly defame the company and its products, Hirst and others at Tropical Graphics have sustained mental anguish, pain, consternation, and emotional distress that has interfered with their lives, business, and regular daily activities.

97.     At the present time, Tropical Graphics is not aware whether Kwait followed through on his improper threats to make false and unlawful statements, and Tropical Graphics intends to discover this information during the course of this litigation.

WHEREFORE, Tropical Graphics demands judgment against Kwait and KD Graphics for an amount to be determined at trial, together with interest, Court costs, attorneys' fees, punitive damages, and any other relief that the Court deems just and proper.


## JURY TRIAL DEMAND

Tropical Graphics hereby demands trial by a jury of all of the counts in its Counterclaim.


_____
Tracy Zurzolo Frisch (ID  No. 71072)
Steven T. Voigt (ID No. 85091)
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
Phone:  215.851.8100
Fax:     215.851.1420

Counsel for Defendants


Date:

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this _____ day of August, 2002, I caused to be served a

true and correct copy of the foregoing Answer and Counterclaim by U.S. first class mail, postage

prepaid, upon the following:

> Leon W. Silverman, Esquire
> Andrew Lapat, Esquire
> Stein and Silverman, P.C.
> 230 S. Broad Street, 18th Floor
> Philadelphia, PA 19102


_____

Steven T. Voigt