UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KD GRAPHICS, INC.** : | | **CIVIL ACTION** |
| **and JEFFREY KWAIT** : | | **No. 02CV4041** |
| : | | |
| **Plaintiffs,** : | | |
| : | | |
| vs. : | | |
| : | | |
| **TROPICAL GRAPHICS, INC.** : | | |
| **and PAUL HIRST** : | | |
| : | | **JURY TRIAL DEMANDED** |
| **Defendants.** : | | |

**<u>ORDER</u>**

IT IS HEREBY **ORDERED** that Plaintiffs' Motion to Dismiss Defendants' Counterclaims is **DENIED**.

_____
J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KD GRAPHICS, INC. and JEFFREY KWAIT | : : : : | CIVIL ACTION No. 02CV4041 |
| Plaintiffs, | : : | |
| vs. | : : | |
| TROPICAL GRAPHICS, INC. and PAUL HIRST | : : : | |
| Defendants. | : : | JURY TRIAL DEMANDED |

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS**

**I.     Introduction**

Plaintiffs KD Graphics, Inc. ("KD Graphics") and Jeffrey Kwait ("Kwait") have filed a motion to dismiss Tropical Graphics, Inc.'s ("Tropical Graphics") and Paul Hirst's ("Hirst") Counterclaim under Rule 12 that is really a thinly disguised motion for summary judgment.  Most of the motion is a podium-pounding re-recitation of the averments in Plaintiffs' Complaint.  These averments do not belong in a Rule 12 motion.

To the extent that Plaintiffs have asserted anything that belongs in a motion to dismiss, they challenge Counts IV and V of the Counterclaim and accuse Defendants Tropical Graphics and Hirst of "tic-for-tac" arguments that "mimic" their own.  Contrary to Plaintiffs' claims, Tropical Graphics and Hirst properly pled causes of action for alter ego breach of contract and intentional interference with business relations.

**II.     Plaintiffs Ignored the Proper Standard for a Motion to Dismiss**

In reviewing a motion to dismiss, the court accepts as true all of the non-moving parties' allegations and all inferences reasonably drawn therefrom, and views them in a light most favorable to the non-moving party. Builders Square, Inc. v. Saraco, 868 F. Supp. 748, 748 (E.D. Pa. 1994). The court should not dismiss an action in the pleading stage unless it appears beyond doubt that the non-moving party can prove no set of facts in support of his claim that would entitle him to relief. Harvey v. Thornton, No. 87-1855, 1987 U.S. Dist. LEXIS 5800, at *2 (E.D. Pa. June 29, 1987).

The issue is not whether the non-moving party will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. See Klein v. ICT Group, Inc., No. 97-6553, 1998 U.S. Dist. LEXIS 11988, at *3 (E.D. Pa. July 28, 1998). Unless the non-moving party can prove no set of facts in support of the claim that would entitle it to relief, the non-moving parties action should not be dismissed. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3rd. Cir. 1994).

**III.   Background**

Tropical Graphics sells graphics design products and services to more than 1500 satisfied customers world-wide. (Amended Counterclaim ¶6). Among the products offered by Tropical Graphics is a house-brand ink known as ArTainium ink. (Id. ¶10). ArTainium ink is a type of ink used in specialized printers known as sublimation printers. (Id. ¶16). Sublimation is a process whereby special ink passes through an ink jet printer onto regular paper, and then the printed image is heat transferred onto a substrate. (Id. ¶8).

KD Graphics as well as its President, Chief Executive Officer and alter-ego, Kwait, was a customer of Tropical Graphics beginning in August, 2001. (Id. ¶13). KD Graphics and Kwait inquired about purchasing a sublimation printer from Tropical Graphics but

apparently decided to purchased a printer from another source. (Id. ¶¶15, 16). From August 2001 through February 2002, however, Kwait and KD Graphics placed four large orders for ArTainium ink with Tropical Graphics. (Id. ¶19).

From the beginning of the relationship, it was apparent that Kwait lacked the skill necessary to operate the sublimation printer, or otherwise was careless and negligent in doing so. (Id. ¶ 24). In or about August 2001, Tropical Graphics offered KD Graphics a technical support services contract for advice related to the maintenance of the sublimation printer, but Kwait and KD Graphics refused to purchase the contract. (Id. ¶23). Despite refusing to pay for the contract, Kwait repeatedly called Tropical Graphics with technical questions. (Id. ¶¶23, 27).

Kwait admitted to Tropical Graphics that, on multiple occasions, he allowed ink to lie in the printer for lengthy periods of time. (Id. ¶¶ 24-26). Indeed, in the early fall of 2001, Kwait told Tropical Graphics that his business suffered a down turn and that he had left the printer idle with ink in it for <u>over two months</u>. (Id. ¶ 24). Tropical Graphics responded that this practice could damage the printer and sent Kwait a flushing solution at no charge to help foster goodwill. (Id.) Kwait also tried to replace the dampers in the printer by himself, against the advice of Tropical Graphics, which had recommended that he hire a trained engineer to do the work. (Id. ¶ 30).

From August 2001 to the beginning of April 2002, Kwait and KD Graphics never complained about Tropical Graphics' ArTainium ink. (Id. ¶36). To the contrary, Kwait and KD Graphics praised the ink and submitted several orders. (Id.) Tropical Graphics continued to work with Kwait and KD Graphics despite their failure to pay for everything they ordered. (Id. ¶¶33, 34). Only after Tropical Graphics notified Kwait and KD Graphics in April 2002 that it

would send no more ink unless they paid their outstanding debt did Kwait and KD Graphics start blaming the problems with the printer on the ArTainium ink. (Id. ¶ 37).

Thereafter, Kwait's unreasonable conduct escalated. In April 2002, Kwait telephoned Tropical Graphics and threatened to disparage the good name and reputation of the company, the products, and the company's President, Paul Hirst. (Id. ¶39). Further, for a period of several days in or about June 2002, Tropical Graphics' fax machine was flooded with hundreds or thousands of blank faxes. (Id. ¶41). Tropical Graphics believes that Kwait sent these faxes. (Id.) As a result of losing the use of its fax machine for several days, Tropical Graphics lost product orders and business, and sustained damage to its customer relationships. (Id. ¶42).

Contrary to the alleged facts proffered by Plaintiffs in their Rule 12 Motion, this case is really about nothing more than a customer who does not want to pay his bills and who has belatedly invented an excuse for his refusal to pay. Nothing that Tropical Graphics or Hirst did or did not do has ever caused Plaintiffs any injury. Indeed, Plaintiffs failed to aver any specific damage in their Complaint. KD Graphics and Kwait simply don't have any damages. The only injury here was sustained by Tropical Graphics and Hirst. Tropical Graphics and Hirst will prove this during discovery and at trial. Plaintiffs' oxymoronic Rule 12 fact pleading must be denied –Rule 12 requires that Plaintiffs' version of the facts must wait for a later day. So long as Tropical Graphics' and Hirst's asserted facts in their Counterclaim support their causes of action, any dispute about those facts must wait.

IV.    **Defendants Have Properly Pled an Alter-Ego Contract Claim Against Kwait**

Kwait challenges Count IV, Tropical Graphics' and Hirst's claim that he is the alter-ego of KD Graphics. Just because Kwait says he is not the alter-ego of KD Graphics does

5

not make it so, and to preclude discovery based on his conclusory statements would be fundamentally unfair to Defendants Tropical Graphics and Hirst.

Kwait plainly controlled KD Graphics and made all of the business decisions. Most of Tropical Graphics' communications with Plaintiffs were with Kwait. (Amended Counterclaim ¶¶ 28, 30, 39). Kwait personally threatened to defame and cause harm to Tropical Graphics and Hirst. (Id. ¶¶ 39, 40). Kwait repeatedly telephoned Tropical Graphics for technical advice related to his printer, despite refusing to sign a support contract for those services. (Id. ¶ 23, 27).

In the Complaint, Kwait avers that he is the President of KD Graphics. (Complaint ¶ 2). According to filings with the Pennsylvania Secretary of State, Kwait is also the Chief Executive Officer of KD Graphics. Christie Kwait is listed as the Secretary and Ladina Kwait is listed as the Treasurer. (See "Exhibit A"). Presumably, these two are members of Kwait's nuclear family or are otherwise relatives.

KD Graphics is not a publicly traded company with detailed public records, but it is certainly a closely-held business completely controlled by Kwait.

Piercing the corporate veil is an equitable theory that requires facts – and discovery – to be proven. Indeed, the factors courts consider to pierce the veil under this equitable analysis include factors that can only be fully analyzed following discovery. These include: "(1) gross undercapitalization; (2) failure to observe corporate formalities; (3) failure to pay dividends; (4) the insolvency of the debtor corporation; (5) siphoning of funds by the dominant stockholders; (6) nonfunctioning officers or directors; (7) absence of corporate records; (8) intermingling of funds; (9) the fact that the subservient corporation is merely a facade for the operations of the dominant stockholder; and (10) a finding of fraud or fundamental

unfairness." Pearson v. Component Technology Corp., 80 F. Supp. 2d 510, 523 (W.D. Pa. 1999); see also Trustees of the National Elevator Industry Pension v. Lutyk, 140 F. Supp. 2d 407, 412-13 (E.D. Pa. 2001).

To the extent that Kwait complains that Tropical Graphics and Hirst did not specifically plead that KD Graphics was a "sham," the above equitable factors used by courts demonstrate this is not necessary. In any event, Tropical Graphics and Hirst have amended the Counterclaim to add allegations related to the control of KD Graphics by Kwait.[1] Thus, even if Plaintiffs have a cognizable argument that there were some technical deficiency in the Counterclaim, the amendments render it moot. Kwait's dealings with Tropical Graphics and Hirst give rise to a strong inference that he is the alter ego of his closely held corporation – an inference that Defendants expect will be confirmed as discovery proceeds.

## V.     Defendants Have Properly Pled that Kwait Interfered with Their Business

Plaintiffs' attempt to dismiss Count V is nothing more than an effort to preclude discovery and conceal their own wrongdoing. Tropical Graphics and Hirst pled a cause of action for interference with business relationships. Plaintiffs' argument must fail.

Pennsylvania recognizes a cause of action for interference with existing or prospective contractual relations. In order to state a claim for tortious interference with contract, a plaintiff need allege only: "(1) that the acts complained of were willful and intentional; (2) that they were calculated to cause damage to the plaintiff and its business; (3) that these were done

---

[1] A red-lined copy of the Amended Counterclaim that Defendants have filed, which shows the changes from the original Counterclaim, is attached hereto as "Exhibit B." In addition to adding several paragraphs to Count IV, Defendants adjusted the amount that Kwait and KD Graphics failed to pay Tropical Graphics on their account, following additional review of relevant records.

with the unlawful purpose of causing damage and loss to the plaintiff without right or justifiable cause on the part of the defendant; and (4) that actual damage and loss resulted." Kerrigan v. Villes, 22 F. Supp. 2d 419, 429 (E.D. Pa. 1998); Ferreri v. Goldberg Securities, Inc., Civ.. A. No. 88-4041, 1989 WL 11073, at *4 (E.D. Pa. 1989). "It is generally recognized that one has the right to pursue his business employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of absolute right." Kerrigan, 22 F. Supp. 2d at 429.

Tropical Graphics and Hirst properly pled all of the elements in Kerrigan. In the Counterclaim, they aver that Kwait unjustifiably flooded Tropical Graphics' fax machine with thousands of blank faxes over a period of several days in June, 2002. (Amended Counterclaim ¶¶ 82-86). Kwait's actions caused Tropical Graphics to lose the use of its fax machine, and it consequently lost business orders and sustained injury to its customer relationships. (Id.)

Tropical Graphics and Hirst have not averred a separate count for defamation although they did state that Kwait threatened to defame Tropical Graphics, its products, and Hirst. Tropical Graphics and Hirst do not know at this time whether Kwait followed through with his threats, to whom he talked or wrote, or the extent of the damage. They only know of the threat. If during the course of discovery Tropical Graphics and Hirst discover such wrongdoing, they will amend their counterclaim to include a separate defamation count. But, despite Plaintiffs' scattered argument in their motion to dismiss, Count V is viable even without the facts related to the defamation threat – the sabotage of Tropical Graphics' fax machine is the core of Count V, and it is cognizable with these allegations alone.

**VI.     Conclusion**

        Tropical Graphics and Hirst respectfully request that the Court deny Plaintiffs' Motion to Dismiss.

                                                                   _____
                                                                   Tracy Zurzolo Frisch, Esquire ID #71072
Steven T. Voigt, Esquire ID #85091
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
(215)851-8100

Counsel for Tropical Graphics, Inc.
and Paul Hirst

Date:

## CERTIFICATE OF SERVICE

I hereby certify that, on this ____ day of September, 2002, I caused to be served a true and correct copy of the foregoing Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss by U.S. first class mail, postage prepaid, upon the following:

> Leon W. Silverman, Esquire
> Andrew Lapat, Esquire
> Stein and Silverman, P.C.
> 230 S. Broad Street, 18th Floor
> Philadelphia, PA 19102

 

_____
Steven T. Voigt