IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KD Graphics, Inc., and Jeffrey Kwait, Plaintiffs, v. Tropical Graphics, Inc., and Paul Hirst, Defendants. | Civil Action No. 02CV4041 Jury Trial Demanded |

**PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES
TO DEFENDANTS' AMENDED COUNTERCLAIMS**

Plaintiffs KD Graphics ("KD") and Jeffrey Kwait ("Kwait") hereby respond to Defendants' Counterclaims as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Denied as a conclusion of law to which no response is necessary. By way of further answer, the amount in controversy pursuant solely to defendant Tropical's counterclaims is less than $75,000.

5. Denied as a conclusion of law to which no response is necessary.

6. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 6 of Defendants' Counterclaims, and those allegations are therefore deemed denied.

7. Admitted.

8. Admitted.

9. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 9 of Defendants' Counterclaims, and those allegations are therefore deemed denied.

10. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 10 of Defendants' Counterclaims, and those allegations are therefore deemed denied. By way of further answer, by way of information and belief ArTainium ink is not manufactured by Tropical Graphics.

11. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 11 of Defendants' Counterclaims, and those allegations are therefore deemed denied.

12. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 12 of Defendants' Counterclaims, and those allegations are therefore deemed denied.

13. Admitted.

14. Denied. Tropical Graphics intentionally misrepresented the products it sold and the services it provided to its customers. KD has never attempted to intimidate Tropical Graphics nor has KD ever disrupted Tropical's business activities. Additionally, KD Graphics has paid a substantial amount of money to Tropical Graphics for ink sold to KD Graphics.

15. Denied. KD Graphics contacted Tropical Graphics concerning the purchase of ink for its newly acquired Jacquard Mutoh Falcon printer.

16. Admitted that KD purchased ArTainium ink from Tropical Graphics. Denied that KD knowingly purchased ink that had not been manufactured by BASF. KD was mislead into believing they had purchased ink manufactured by BASF and sold under the ArTainium label.

17. Denied. Tropical Graphics never offered a support contract to KD Graphics.

18. Denied. Tropical Graphics never offered a support contract to KD Graphics.

19. Denied as stated. KD believed that it had purchased ink manufactured by BASF.

20. Admitted.

21. Admitted that KD was at all times willing to pay for its purchases from Tropical. However, KD expected Tropical to provide the type and quality of ink that had been represented to KD that it purchased and provide the support that had been promised.

22. Admitted that KD paid Tropical Graphics $5821.50. KD purchased ink on August 21, 2001 for $879.65, and paid for this purchase on October 25. KD made another purchase September 9, which paid for on December 3. The next purchase was for bulk inks made on September 12, and was paid for on in two parts on February 4 and 13, 2002. A bulk ink system was purchased on September 24 which was paid for on December 28. Bulk in was purchased on October 4 and paid for on March 29, 2002. Tropical billed KD $206.50 for a banner it produced for KD. This was a project KD was unable to print the banner itself due to the defective ink sold to it by Tropical. The banner was paid for on March 29, 2002. KD purchased ink from Tropical due to the false representations made by Defendants. The remainder of the allegations in paragraph 22 are denied.

23. Denied. As admitted by Tropical Graphics in paragraph 22 of its Amended Counterclaim, KD made payments to Tropical. In fact, KD paid Tropical $5821.50 for products and services purchased from Tropical. By way of further answer, Tropical Graphics promised technical support as part of the purchase of the ink.

24. Denied. KD began to suffer problems with the ink the first time it ran the ink in the printer. KD never allowed the ink to sit idle for two months. The difficulties suffered by KD due to the clogging ink were cause by defective ink, no t negligence by KD or Kwait.

25. Denied. KD did not allow the printer to sit idle.

26. Admitted that KD requested technical support from Tropical. Denied that KD allowed the ink to sit unused in printer for an extended period of time. Tropical never offered KD a support contract. The difficulties suffered by KD due to the clogging ink were due to defective ink not negligence by KD or Kwait. By way of further answer Tropical did not advise KD to contact a professional engineer to do repairs but instead advised Kwait to change the dampers on the printer and told him how to do so.

27. Denied as stated. Tropical promised technical support as part of the sale of the ink. Tropical willingly tried to provide technical support which was not disruptive to their business.

28. Denied that Kwait caused any damage to the printer. By way of further answer, Tropical graphics advised KD and Kwait that they should disassemble the printer and told Kwait how to do it.

29. Admitted that dampers need to be periodically replaced. By way of further answer, see Plaintiffs' response to paragraph 28.

30. Denied as stated. Tropical Graphics advised KD and Kwait that they should disassemble the printer and told Kwait how to do it.

31. Denied. KD did not damage the printer through any act of its own. The printer did not work properly from the first time it had Tropical Graphics' ink. Thus any repairs or lack thereof performed by KD or Kwait could not have caused the damage complained of in the Amended Complaint.

32. Denied. Tropical made fraudulent misrepresentations which are fully detailed in Plaintiffs' Amended Complaint.

33. Denied. KD was unable to complete the project because the ink purchased from Tropical Graphics rendered its printer unusable. Tropical Graphics did not do the banner project properly. Tropical Graphics employed electrostatic printing and not dye sublimation causing the banner to be of low quality with very poor color. The project did not meet specifications in that the banner was not the right size.

34. Admitted in part, Denied in part. Denied to the extent the Tropical Graphics did not perform the project up to the desired specifications; Tropical graphics used electrostatic printing instead of dye sublimation printing which resulted in poor color quality and bad esthetics, and the project was delivered substantially late.

35. Denied. KD did not purchase more ink. KD wanted Tropical Graphics to provide the promised technical support needed to get the dye sublimation printer functioning properly.

36. Denied. KD had trouble with the ink immediately upon commencing use. It never praised the quality of the ink. Any additional orders were made in efforts to complete current projects.

37. Denied. KD had trouble with the ink immediately upon commencing use. It never praised the quality of the ink. Any additional orders were made in efforts to complete current projects.

38. Denied. KD used most of the ink it purchased from Tropical Graphics as part of efforts to complete projects or to cleanse the printer. KD still has unused ink that it would be willing to return to Tropical Graphics for a refund.

39. Denied. Kwait has never engaged in such conduct.

40. Denied. Kwait never made any threats.

41. Denied. KD did not send the faxes. Plaintiffs deny that the alleged event ever took place.

42. Denied. KD did not send the faxes. Plaintiffs deny that any orders were lost.

## Count I - Breach of Contract

43. KD incorporates by reference the responses to allegations contained in paragraphs 1 to 42 as if set forth in full herein.

44. Denied. KD contracted for the delivery of ink manufactured by BASF as represented to KD by Hirst and Tropical Graphics.

45. Denied. Tropical misrepresented to KD that KD purchased ink manufactured by BASF as represented to KD by Hirst and Tropical Graphics.

46. Denied. KD ordered ink manufactured by BASF as represented to KD by Hirst and Tropical Graphics.

47. Denied. Tropical and KD had agreements for the delivery of ink manufactured by BASF as represented to KD by Hirst and Tropical Graphics. Tropical Graphics breached its contract with KD.

48. Denied. KD agreed to purchase ink manufactured by BASF as represented to KD by Hirst and Tropical Graphics. By way of further answer, KD paid for all purchases from Tropical Graphics from in August, September, October 2001 and part of February, 2002. It was only when Tropical Graphics ceased to provide any support for the malfunctioning ink and that KD realized that Tropical Graphics made untruthful representations as part of the sale of ink to KD that KD stopped making payments.

49. Denied. KD agreed to purchase ink manufactured by BASF as represented to KD by Hirst and Tropical Graphics. Tropical Graphics breached its contract with KD to ship ink manufactured by BASF.

50. Denied. Tropical breached its contractual duty to ship ink manufactured by BASF as per KD's order and as represented to KD by Hirst and Tropical Graphics. By way of further answer, KD made payments for the product shipped to it by Tropical Graphics. It was only after KD learned that Tropical Graphics had breached its contract with KD that KD ceased making payments to Tropical Graphics.

51. Denied. Tropical breached its contract with KD to ship ink manufactured by BASF. KD has suffered and continues to suffer damages as a direct result of Tropical Graphics' breach.

WHEREFORE, Plaintiffs KD Graphics and Jeffrey Kwait request that this Court enter an Order denying Defendants' demands for relief, dismissing defendants' claims for relief,

dismissing defendants' counterclaims with prejudice and awarding plaintiffs and counterclaim defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this court may deem proper.

### **Count II - Breach of Implied Contract**

52. KD incorporates by reference the responses to allegations contained in paragraphs 1 to 51 as if set forth in full herein.

53. Admitted that KD purchased additional ink and the Tropical Graphics assisted in the completion of particular projects. However, Tropical used electrostatic printing and not dye sublimation, the result that both jobs were of inferior quality. Additionally, one of the banner jobs was the wrong size and the other was delivered substantially late.

54. Admitted that Tropical assisted in the completion of projects. Denied that the projects were completed in a timely or satisfactory manner. By way if further answer, see response to #53.

55. Denied. KD was billed $206.50 for a fabric banner on February 5, 2002 and despite this banner being of an inferior quality and not meeting the requested specifications, KD paid for the banner on March 29, 2002. KD was billed $348.17 for an additional fabric banner on April 3, 2002. This banner was also of an inferior quality and did not meet specifications and was delivered substantially late. KD did not pay for this banner because Tropical Graphics breached its agreement with KD.

56. Denied as a conclusion of law to which no response is required.

57. Denied. Tropical Graphics did not perform under the contract as the banner did not comply with indicated specifications and was not delivered on time, as such Tropical Graphics breached its contract with KD.

58. Denied. Technical support was promised to KD as part of its purchase of ink.

59. Denied. KD was never offered a written support contract by Tropical Graphics. By way of further answer, see response to #58.

60. Denied as stated. Tropical Graphics never provided adequate technical support as the ink repeatedly clogged from the very first time it was used and failed to perform as promised by Tropical Graphics.

61. Denied as a conclusion of law to which no response is required. By way of further answer, no written contract was ever offer nor was KD ever billed for these services. Tropical Graphics is barred by the doctrine of laches from seeking payment.

62. Denied as a conclusion of law to which no response is required. By way of further answer, no written contract was ever offer nor was KD ever billed for these services. Tropical Graphics is barred by the doctrine of laches from seeking payment.

WHEREFORE, Plaintiffs and Counterclaim defendants request that this Court enter an Order denying defendants' and Counterclaim plaintiff's demands for relief, dismissing defendants' claims for relief, dismissing defendants' counterclaims with prejudice and awarding plaintiffs and counterclaim defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this court may deem proper.

### Count III - Unjust Enrichment/Quantum Meruit

63. KD incorporates by reference the responses to allegations contained in paragraphs 1 to 62 as if set forth in full herein.

64. Denied as a conclusion of law to which no response is required.

65. Denied. Tropical Graphics assisted in the completion of particular projects. However, Tropical used electrostatic printing and not dye sublimation, the result that both jobs were of inferior quality. Additionally, one of the banner jobs was the wrong size and the other was delivered substantially late.

66. Denied. Tropical Graphics assisted in the completion of particular projects. However, Tropical used electrostatic printing and not dye sublimation, the result that both jobs were of inferior quality. Additionally, one of the banner jobs was the wrong size and the other was delivered substantially late.

67. Denied. See response to paragraph 55.

68. Denied. KD was billed $348.17 for an additional fabric banner on April 3, 2002. This banner was also of an inferior quality and did not meet specifications and was delivered substantially late. KD did not pay for this banner because Tropical Graphics breached its agreement with KD.

69. Denied as a conclusion of law to which no response is required.

70. Denied as a conclusion of law to which no response is required. By way of further answer, no written contract was ever offer nor was KD ever billed for these services. Tropical Graphics is barred by the doctrine of laches from seeking payment.

71. Denied. KD was never offered a written support contract by Tropical Graphics. Technical support was promised to KD as part of its purchase of ink.

72. Denied. Tropical Graphics never provided adequate technical support as the ink repeatedly clogged from the very first time it was used and failed to perform as promised by Tropical Graphics.

73. Denied as a conclusion of law to which no response is required. By way of further answer, no written contract was ever offer nor was KD ever billed for these services. Tropical Graphics is barred by the doctrine of laches from seeking payment.

74. Denied as a conclusion of law to which no response is required. By way of further answer, no written contract was ever offer nor was KD ever billed for these services. Tropical Graphics is barred by the doctrine of laches from seeking payment.

WHEREFORE, Plaintiffs and Counterclaim defendants request that this Court enter an Order denying defendants' and Counterclaim plaintiff's demands for relief, dismissing defendants' claims for relief, dismissing defendants' counterclaims with prejudice and awarding plaintiffs and counterclaim defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this court may deem proper.

### Count IV - Alter-Ego Breach of Contract and Breach of Implied Contract

75. KD incorporates by reference the responses to allegations contained in paragraphs 1 to 74 as if set forth in full herein.

76. Denied as a conclusion of law to which no response is required. By way of further answer, Tropical Graphics has not plead facts to support this allegation.

77. Denied as a conclusion of law to which no response is required. By way of further answer, Tropical Graphics has not plead facts to support this allegation.

78. Denied. KD was never offered a contract for support services. Additionally, for a time Tropical Graphics attempted to provide technical support to KD. By way of further answer, no written contract was ever offer nor was KD ever billed for these services. Tropical Graphics is barred by the doctrine of laches from seeking payment.

79. Denied. KD and Kwait never engaged in such activity nor did he cause any harm to Tropical Graphics and Hirst.

80. Admitted.

81. Admitted.

82. Admitted.

83. Admitted.

84. Admitted.

85. Denied. Tropical Graphics interacted with other KD employees, including Nancy Balderamo and Christy Kwait. By way of further answer, denied as a conclusion of law to which no responsive pleading is required.

86. Denied as a conclusion of law to which no response is required. By way of further answer, Christy Kwait is a functioning officer of KD Graphics.

87. Denied as a conclusion of law to which no response is required.

WHEREFORE, Plaintiffs and Counterclaim defendants request that this Court enter an Order denying defendants' and Counterclaim plaintiff's demands for relief, dismissing defendants' claims for relief, dismissing defendants' counterclaims with prejudice and awarding

plaintiffs and counterclaim defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this court may deem proper.

### Count V - Intentional Interference With Business Relations

88. KD incorporates by reference the responses to allegations contained in paragraphs 1 to 87 as if set forth in full herein.

89. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 89 of Tropical Graphics' Counterclaims, and those allegations are therefore deemed denied.

90. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 90 of Tropical Graphics' Counterclaims, and those allegations are therefore deemed denied.

91. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 91 of Tropical Graphics' Counterclaims, and those allegations are therefore deemed denied.

92. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 92 of Tropical Graphics' Counterclaims, and those allegations are therefore deemed denied.

93. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 94 of Tropical Graphics' Counterclaims, and those allegations are therefore deemed denied.

94. KD lacks sufficient knowledge or information to admit of deny the allegations set forth in paragraph 94 of Defendants' Counterclaims, and those allegations are therefore deemed denied.

95. Denied. KD did not send blank faxes to Tropical Graphics.

96. Denied. KD did not commit the actions alleged in paragraphs 91-95.

97. Denied. KD did not commit the actions alleged in paragraph 91-95.

98. Denied as a conclusion of law to which no response is required. By way of further answer, KD did not commit the actions alleged in paragraph 91-95..

99. Denied. Kwait did not make such threats. Even if he did make such threats, this does not constitute the tort of intentional interference with business relations.

100. Denied. Kwait did not make such threats. Even if he did make such threats, this does not constitute the tort of intentional interference with business relations.

101. Denied as a conclusion of law to which no response is required. By way of further answer, Kwait did not make such threats. Even if he did make such threats, this does not constitute the tort of intentional interference with business relations nor the tort of defamation.

102. Denied as a conclusion of law to which no response is required. By way of further answer, Kwait did not make such threats. Even if he did make such threats, this does not constitute the tort of intentional interference with business relations nor the tort of defamation..

103. Denied as a conclusion of law to which no response is required. By way of further answer, Kwait did not make such threats. Even if he did make such threats, this does not

constitute the tort of intentional interference with business relations nor the tort of defamation.

104. Denied as a conclusion of law to which no response is required. By way of further answer, Kwait did not make such threats. Even if he did such threats do not constitute the tort of intentional interference with business relations nor the tort of defamation..

105. Denied as a conclusion of law to which no response is required. By way of further answer, Kwait did not make such threats. Even if he did such threats do not constitute the tort of intentional interference with business relations nor the tort of defamation.

106. Denied. Kwait did not make such threats. Even if he did such threats do not constitute the tort of intentional interference with business relations.

WHEREFORE, Plaintiffs and Counterclaim defendants request that this Court enter an Order denying defendants' and Counterclaim plaintiff's demands for relief, dismissing defendants' claims for relief, dismissing defendants' counterclaims with prejudice and awarding plaintiffs and counterclaim defendants such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this court may deem proper.

## **AFFIRMATIVE DEFENSES**

107. Any and all claims set forth in Defendants' Amended Counterclaims fail to state any claims upon which relief can be granted.

108. Defendants' claims fail to satisfy the jurisdictional amount of $75,000.

109. Count I fails to set forth the elements of a claim for breach of contract.

110. Count II fails to set forth the elements of a claim for breach of implied contract.

111. Count III fails to set forth the elements of a claim for unjust enrichment.

112. Count IV fails to set forth the elements for a breach of corporate protection as an alter-ego against Kwait.

113. Count V fails to set forth the elements of a claim for intentional interference with business relations.

114. Plaintiffs reserve the right to plead deficiencies in the form and substance of Defendants' Amended Counterclaims at any time, including but not limited to, a motion for judgment as a matter of law and at trial.

115. Plaintiffs reserve the right to file an action for wrongful use of civil proceedings upon termination of this litigation in their favor. Plaintiffs reserve the right to seek sanctions for frivolous litigation and to raise this as a defense.

116. Defendants claims are barred by the doctrines of estoppel, laches, unclean hands and other equitable doctrines.

117. Any damages Defendants purportedly sustained were the result of acts, omissions or warranties made by other presently unnamed parties. Plaintiffs reserve the right to assert claims for indemnification or contribution against presently unnamed parties.

118. Defendants own acts or omissions caused any damages purportedly sustained by Defendants.

119. Defendants failed to mitigate their damages, if any exist.

120. Plaintiffs acted in good faith at all times.

121. No act of Plaintiffs was defamatory as a matter of law.

122.  Defendants claim of intentional interference with business relations must fail because there is no proximate cause between any claimed actions and any of Defendants' alleged harm.

123.  Defendants claim of intentional interference with business relations must fail because Kwait is not alleged to have made any defamatory communications.

124.  Plaintiffs did not engage in extreme and outrageous conduct.

125.  Plaintiffs reserve their right to raise additional affirmative defenses as they become available and apparent during discovery.

WHEREFORE, Plaintiffs deny any and all liability to the Defendants and demand the judgment be entered in their favor against Defendants together with the cost of suit and attorneys' fees.

DATE: October 17, 2002                    STEIN & SILVERMAN, P.C.

_____
Leon W. Silverman, ID #04244
Andrew Lapat, ID #55673
230 S. Broad Street, 18th Floor
Philadelphia, PA 19102
(215) 985-0255

Counsel for Plaintiffs

G:\KD Graphics\AnsCounterclaim.wpd