## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KD Graphics,  Inc., and | : | |
| Jeffrey Kwait, | : | |
| Plaintiffs, | : | Civil Action |
| v. | : | No. 02CV4041 |
| Tropical Graphics, Inc., and | : | |
| Paul Hirst, | : | |
| Defendants. | : | Jury Trial Demanded |
| | : | |

## MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT

## FACTS

Plaintiffs in this action are Jeff Kwait ("Kwait") and KD Graphics, Inc. ("KD").  In

September 2001, KD made the decision to expand its business into dye sublimation printing onto

fabric.  (Am. Comp. ¶10[1])  Dye sublimation printing requires specialized printers dedicated to the

sublimation process.  Using specialized inks, the print goes onto paper and then in a process

similar to a heat press is sublimated onto fabric for the finished piece.  (Am. Com. ¶11)  KD

purchased specialized sublimation printing equipment manufactured by Mutoh and known as a

Falcon printer (hereinafter referred to as  "Mutoh"). (Am. Comp. ¶12)   KD needed specialized

ink for the Mutoh printer. (Am. Comp. ¶13)  After investigating its purchasing options, KD

decided to purchase ink for the Mutoh printer from defendants Tropical Graphics ("Tropical")

and Paul Hirst ("Hirst"), the president of Tropical.

Tropical's website stated the following: "As the world's largest producer of dye

sublimated ink, no one has more experience than we do dealing with ink jet dye sublimation.  So

---

[1]         All references to the Amended Complaint are referred to hereinafter as ("Am.
Cmp. ¶")

you know that if you use our system, you are guaranteed to get the desired results."  Additionally the website promised "Great Technical Support" and "No More Clogging." (Am. Comp. ¶14) Hirst on or about August of 2001, in addition to restating the promises contained on the website to Kwait, stated that Tropical sold inks for dye sublimation printers which were manufactured by chemical giant BASF. (Am. Comp. ¶15)  In justified and reasonable reliance on the representations made by Defendants, KD purchased ink from Tropical.

After taking delivery of the ink, KD began to use the ink in the printing equipment.  KD immediately began to have difficulties with the ink clogging.  KD immediately set about to discover the nature of the problem and sought technical support from both Jacquard, the company that sold KD the printer, and Tropical. (Am. Comp. ¶¶16,17)  Tropical provided no assistance, while Jacquard worked diligently with KD to determine the nature of the problem and solve it.  After substantial analysis KD disassembled the printer and found that the ink clogged the filters, preventing the flow of ink to the print heads.  Ultimately, Tropical refused to provide any support because of an outstanding balance for the defective ink sold by Tropical to KD. (Am. Comp. ¶20)

The ink sold by Tropical was not BASF ink as represented by Hirst to KD.  The failure of the Mutoh printer prevented KD from meeting its contractual obligations with its customers. Printing jobs that were run with the Tropical ink took substantially longer to complete due to the ink clogs and were not completed in a satisfactory manner.  This increased the cost of the dye sublimation process, and reduced the overall throughput capacity of KD.  Sublimation jobs that were to be performed by KD now had to be out-sourced.  KD has been forced to out-source a substantial number of print jobs and these losses are continuing. (Am. Comp. ¶23)  Additionally,

KD's client relationships have been damaged due to the increased time to process and complete

the dye sublimation printing.  KD was required, due to the failure of the sublimation inks sold by

defendants, to use substitute processes which were inferior to dye sublimation in order to meet

deadlines agreed to on the expectation of using its Mutoh printer, which it was unable to use.

(Am. Comp. ¶24).

KD agreed to pay the remainder of the bill but only after it could get the printing

equipment to function properly with the ink purchased from Tropical. (Am. Comp. ¶20).  Hirst

and Tropical made repeated calls to KD demanding payment.  Hirst was told not to call Plaintiffs

about this matter.  Hirst ignored those requests and continued to make harassing telephone calls.

During the course of the telephone calls, Hirst used profane language and made threats against

Plaintiffs and their employees. (Am. Comp. ¶25).  In retaliation against KD for the perceived

failure to pay, Hirst began a campaign to ruin KD and Kwait. (Am. Comp. ¶26).  Hirst admits

that without the permission of KD, an agent of Hirst and Tropical went onto a website for World

Wide Inks and put defamatory material about KD on the website.  Specifically, this agent wrote

"Watch out for the Crooks in this Industry.  If you deal with this company make sure you do it on

a cash only basis your money is not safe."  KD's name address, phone and fax numbers were then

listed.  (Defendants' Answer, Affirmative Defenses and First Amended Counterclaim to

Plaintiffs' Amended Complaint ("Answer") ¶35).  As part of their effort to collect a perceived

debt, Defendants have made false or misleading statements about KD and Kwait.  Specifically,

defendants have admitted that they called Kwait a "crook" and on the World Wide Inks website

warned others about "crooks in the industry" and then identified KD.  Additionally, Defendants

impersonated KD and Kwait when they used their email address to distribute this defamatory

3

statement to internet search engines.  (Answer ¶¶54, 55).  Defendants did not have Plaintiffs'
permission to disseminate this false and defamatory information nor did Defendants have a
privilege which allowed them to publish the defamatory material.  (Am. Comp. ¶55).  On or
about June 13, 2002, Hirst called Plaintiffs and told them to go to the website for World Wide
Inks, directing them to the defamatory material he placed on the internet.  (Am. Comp. ¶32).
Plaintiffs have been substantially damages by defendants' actions.  Plaintiffs bring causes of
action for violation of 15 U.S.C. §1125, 73 P.S.§201-2, breach of contract, fraud and defamation.

On September 19, 2002, Defendants served by mail their Answers, Affirmative Defenses
and Amended Counterclaims on Plaintiffs.  Pursuant to Federal Rule of Civil Procedure Rule
12(a)(2).  Plaintiffs had twenty days to respond and because the pleading was served by mail an
extra three days.  Fed. R. Civ. P. Rule 6(e).  Plaintiffs' Answer to the Amended Counterclaims
was due October 15, 2002.[2]  On October 16, Defendants filed for an entry of default pursuant to
Fed. R. Civ. P. Rule 55(a) and the clerk entered judgment on that date.  Plaintiffs filed their
Answer on October 17, two days late and a day after the entry of default. A true and correct copy
of Plaintiffs Answer and Affirmative defenses to Defendants' Amended Counterclaim is attached
hereto as Exhibit A.

## LEGAL STANDARDS

"As a general matter this court does not favor defaults and that in a close case doubts
should be resolved in favor of setting aside the default and reaching a decision on the merits."
Gross v. Stereo Component Systems, Inc., 700 F. 2d 120, 122 (3rd Cir. 1983), citing, Farnese v.

---

[2]    Twenty-three days after service was October 12, a Saturday, that Monday was
Columbus Day and the court was closed.  The Answer was due therefore on Tuesday, October
15.

Bagnasco, 687 F. 2d 761, 764 (3rd Cir. 1982); Feliciano v. Reliant Tooling Co., 691 F. 2d 653,

656 (3rd Cir. 1982).  It is "well established that a district court ruling on a motion to set aside a

default under Rule 55(c) . . .must consider the following three factors: (1) whether the

[defendant] will be prejudiced; (2) whether [Plaintiff] has a meritorious defense; and (3) whether

the default was the result of [Plaintiffs'] culpable conduct." Gold Kist, Inc. v. Laurinburg Oil

Co., Inc., 756 F. 2d 14, 19 (3rd Cir. 1985)(citations omitted).

**ARGUMENT**

Defendants Amended Counterclaims consist of demands for payment for the following

items, (1) payment for ink sold to Plaintiffs, (2) payment for technical support provided to

Plaintiffs, (3) payment for banner projects completed for Plaintiffs and (4) Defendants allege

intentional interference with business relationships in that Kwait threatened to defame

Defendants and that KD sent thousands of faxes that disrupted the business.

## 1.    **Defendants Will Not Be Prejudiced By Setting Aside the Default**

The Plaintiffs filed and served an Answer to the Amended Counterclaim just two days

late.  In fact, Plaintiffs received the defendants' request for the entry of a default the same day

they filed the Answer to the Amended Counterclaim.  The instant motion to open the entry of

default was filed merely six days after Plaintiffs received the application for entry of default.

Both parties are continuing to go forward with discovery and this case continues to be actively

litigated.  Defendants have not stopped the prosecution of their defenses as a result of the entry of

default.  Defendants' ability to pursue these claims has not been hindered since the entry of the

default.  See, Feliciano, 691 F. 2d at 657 (3rd Cir. 1982)

Plaintiffs bring allegations of fraud against defendants concerning their purchase of the ink. Plaintiffs allege that defendants fraudulently misrepresented that the ink purchased by Plaintiffs was manufactured by BASF. This assertion would also form the basis of Plaintiffs' defense against Defendants' counterclaims for breach of contract. Defendants will have to defend this action in the exact same manner that they will prosecute their claims under the Amended Counterclaims. Therefore these exact same issues will be raised at trial. There is no prejudice in opening the entry of default.

2.    **Plaintiffs Have A Meritorious Defense To The Amended Counterclaims**

The Plaintiffs have a meritorious defense to the Amended Counterclaims. Plaintiffs' respond to defendants' breach of contract claims with assertions that the contract to purchase ArTainium ink from defendants was obtained through fraudulent misrepresentations. The exact same allegations of fraudulent misrepresentations will be presented in Plaintiffs' case. Concerning payment for the banner projects, Plaintiffs state that the banner projects performed by Defendants were deficient and did not comply with the agreed specifications, print techniques and time of performance. Plaintiffs respond to the demands for payment for the technical support that this was a service provided incidental to the purchase of the ink. No service contract was ever offered to Plaintiffs not were they ever billed for the technical support.

Finally, with regard to claim of intentional interference with business relationships, Kwait denies ever threatening to defame Defendants. Further, Plaintiffs have provided Defendants with telephone records which demonstrate that Plaintiffs made _no_ calls or faxes to the Defendants during the time period when the offending faxes were allegedly sent. "A meritorious defense is presumptively established when the 'allegations of defendant's answer if established on trial

6

would constitute a complete defense to the action.'" <u>Hritz v. Woma Corp.</u>, 732 F. 2d 1178, 1181 (3rd Cir. 1984). Plaintiffs' allegations in this instance form a complete defense to the action and thus Plaintiffs have stated a meritorious defense.

### 3. The Default Was Not the result of Culpable Conduct

"The standard for 'culpable conduct' in this Circuit is the 'wilfulness' or 'bad-faith' of a non-responding defendant." <u>Hritz</u>, 732 F. 2d at 1182. The appropriate standard requires that more than mere negligence be demonstrated. <u>Hritz</u>, 732 F. 2d at 1183 Plaintiffs' conduct was not culpable. The pleading deadline was missed by only two days. This motion to open the entry of default was filed within a week of its entry. Plaintiffs were merely negligent in failing to respond on the designated day for filing.[3]

---

[3]        In fact, a review of the Affidavit of Steven Voigt suggests that defendants miscalculated the date when an answer was due. Paragraph 3 states that Plaintiffs did not file an answer to the amended counterclaim on October 7. Such a response was not due on October 7. Defendants waited nine days from the date they believed the response was due to file for an entry of default. If defendants had waited nine days from the appropriate date, October 15, they would never have made such an application. This exposition is not meant to relieve Plaintiffs from fault, but to illustrate that their failure was a result of simple negligence and nothing more.

Plaintiffs have met the liberal standards for opening an entry of default and respectfully request this Court to open the entry of default and permit the filing of the attached Plaintiffs' Answer and Affirmative Defenses to Defendants' Amended Counterclaims.

DATE: October 23, 2002                          Respectfully submitted,

                                                STEIN AND SILVERMAN, P.C.


                                                _____
                                                Leon W. Silverman, ID #04244
                                                Andrew Lapat, ID #55673
                                                230 S. Broad Street, 18th Floor
                                                Philadelphia, PA 19102
                                                (215) 985-0255

                                                Counsel for Plaintiffs

8

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KD Graphics, Inc., and | : | CIVIL ACTION |
| Jeffrey Kwait, | : | NO. 02-CV4041 |
| Plaintiffs, | : | |
| v. | : | |
| Tropical Graphics, Inc., and | : | |
| Paul Hirst, | : | JURY TRIAL DEMANDED |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' MOTION TO SET ASIDE ENTRY OF DEFAULT**

     Plaintiffs KD Graphics ("KD") and Jeffrey Kwait ("Kwait") hereby move this Honorable

Court pursuant to Rule 55(c) of the Federal Rules of Civil Procedure to set aside the entry of

default entered on October 16, 2002.  KD and Kwait respectfully request that this motion be

granted and in support of such motion attach the accompanying Memorandum.

DATE: October 23, 2002          Respectfully submitted,

                            STEIN AND SILVERMAN, P.C.

                            _____

                            Leon W. Silverman, ID #04244
                            Andrew Lapat, ID #55673
                            230 S. Broad Street, 18th Floor
                            Philadelphia, PA 19102
                            (215) 985-0255

                            Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KD Graphics,  Inc., and | : | |
| Jeffrey Kwait, | : | |
| Plaintiffs, | : | Civil Action |
| v. | : | No. 02CV4041 |
| Tropical Graphics, Inc., and | : | |
| Paul Hirst, | : | Jury Trial Demanded |
| Defendants. | : | |
| | : | |

## ORDER

AND NOW, this      day of                , 2002, upon consideration of Plaintiffs' Motion

to Set Aside Entry of Default and Defendants' response thereto, it is hereby ORDERED that

Plaintiffs' Motion to Set Aside Entry of Default is GRANTED and it is further ORDERED as

follows:

> 1.       Plaintiffs can file their Answer and Affirmative Defenses to Defendants'
>
>       Amended Counterclaims.

_____

                                                                    J.