02-955

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KD GRAPHICS, INC. and JEFFREY KWAIT | : | |
| **Plaintiffs,** | : | |
| | : | CIVIL ACTION NO. 02-4041 |
| v. | : | |
| | : | |
| TROPICAL GRAPHICS, INC. and PAUL HIRST | : | |
| **Defendants**. | | |

## ORDER

AND NOW, this        day of                , 2003, upon consideration of Plaintiffs' Motion for

Leave to Amend, and Defendants' Response thereto, it is hereby ORDERED that Plaintiffs' Motion

for Leave to Amend is DENIED.

BY THE COURT:

_____
                                                J.

02-955

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KD GRAPHICS, INC. and JEFFREY KWAIT   :
                **Plaintiffs,**   :
                              :        CIVIL ACTION NO. 02-4041
       v.                     :
                              :
TROPICAL GRAPHICS, INC. and PAUL HIRST  :
                **Defendants**.

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Defendants, Tropical Graphics, Inc. ("Tropical") and Paul Hirst ("Hirst"), hereby moves this Honorable Court to deny Plaintiffs' Motion for Leave to Amend to file a Second Amended Complaint which names Simon Wells as an Additional Defendant.  In support of this Motion, Defendants rely on the attached Memorandum of Law.

DATE: January 6, 2003.

                            Respectfully submitted,

                            REGER & RIZZO, LLP

          By:   _____
                    Jason J. Sweet, Esquire
                    1150 First Avenue, Suite 250
                    King of Prussia, PA 19406
                    610-878-9901
                    Attorney for Defendants

2-955

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KD GRAPHICS, INC. and JEFFREY KWAIT    :
                **Plaintiffs,**    :
                          :      CIVIL ACTION NO. 02-4041
      v.                       :
                          :
TROPICAL GRAPHICS, INC. and PAUL HIRST  :
                **Defendants**.

DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFFS'
MOTION FOR LEAVE TO AMEND

I.    FACTS:

      On December 20, 2002, Plaintiffs filed a Motion for Leave to file a Second Amended Complaint allegedly based on information discovered at the deposition of Tropical's Vice President, Simon Wells, which occurred on December 16, 2002. As will be argued more fully below, Plaintiffs file this Motion in bad faith, seeking to further harass the Defendants and prejudice their case. Although Plaintiffs allege that a Motion for Leave to Amend was filed based on newly discovered facts by Mr. Wells' December 16, 2002 deposition alone, Plaintiffs have known that Mr. Wells made the alleged defamatory statements since October 30, 2002 when Defendants, Tropical and Hirst, responded to Plaintiffs' Interrogatories by stating that Mr. Wells posted the statement: "watch out for crooks in this industry. If you deal with this company make sure you do it on a cash only basis your money is not safe." (See Defendants' Response to Plaintiffs' Interrogatory #7, attached and marked as Exhibit "A"). Interestingly, Plaintiffs do not cite to Mr. Well's deposition transcript, nor do they attach it to their Motion. Plaintiffs incorrectly summarize and vaguely interpret Mr. Wells' deposition testimony for their own motive of harassment and obtaining leave to file a Second Amended Complaint.

1

The facts giving rise to this lawsuit are as follows. Defendant, Tropical Graphics, Inc. ("Tropical"), sells graphic design products and services to more than fifteen hundred (1500) satisfied customers world wide. Among the products offered by Tropical is a house-brand ink known as Artainium Ink. Artainium Ink is a type of ink used in specialized printers known as sublimation printers. Sublimation is a process whereby special ink is passed through an ink jet printer onto regular paper, and then the printed images are transferred onto a substraight.

Plaintiff, KD Graphics ("KD"), as well as its President, Chief Executive Officer and Alter Ego, Jeff Kwait ("Kwait") was a customer of Tropical beginning in August, 2001. KD and Kwait inquired about purchasing a sublimation printer from Tropical Graphics but decided to purchase a printer from another source. However, from August, 2001 through February, 2002, Kwait and KD placed four large order for Artainium ink with Tropical.

From the beginning of the relationship it was apparent that Kwait lacked the skill necessary to operate the sublimation printer, or otherwise was careless and negligent in doing so. During August, 2001, Tropical offered KD a technical support services contract for advice related to the maintenance of the sublimation printer, but Kwait and KD refused to purchase the contract. Despite refusing to pay for the contract, Kwait repeatedly called Tropical for technical questions. Kwait admitted to Tropical that, on multiple occasions, he allowed ink to lay in the printer for lengthy periods of time. Indeed, in the early fall of 2001, Kwait told Tropical that his business suffered a down turn and that he had left the printer idle with ink in it for over two months. Tropical responded that this practice can damage the printer and sent Kwait a flushing solution at no charge to help foster good will. Kwait also tried to replace the dampers in the printer himself against the advice of Tropical, which had recommended that he hire a trained engineer to do the work. From August, 2001 to the beginning of April, 2002, Kwait and KD never complained about Tropical's Artainium ink. To the contrary Kwait and KD praised the ink and submitted several orders. Tropical continued to work with Kwait and KD despite their failure to pay for everything they ordered. Only after Tropical notified Kwait and KD in April, 2002 that it would not send any additional ink unless they paid their outstanding debt, did Kwait and KD start blaming the problems with the printer on the Artainium ink.

Thereafter, Kwait's unreasonable conduct escalated. In April, 2002, Kwait telephoned Tropical and threatened to

2

disparage the good name and reputation of the company, products, and company's President, Paul Hirst.  Further, for a period of several days in or about June, 2002, Tropical's fax machine was flooded with hundreds of thousands of blank faxes.  Tropical believes that Kwait sent these faxes.  As a result of using the fax machine for several days, Tropical lost product orders, business and sustained damage to its customer relationships.

   Contrary to the insinuation proffered by Plaintiffs in their Motion for Leave to Amend, Mr. Wells' statements and their reasons surrounding same have been known to Plaintiffs since Defendants filed their Answer, Affirmative Defenses and First Amended Counterclaim to Plaintiffs' Amended Complaint.  Specifically, in response to paragraph 35 of Plaintiffs' Amended Complaint, Defendants admitted that an agent of Tropical Graphics posted the information Plaintiffs' complain of on the World Wide, Inc.'s web site.  (See paragraph 35 of Defendants' Answer, Affirmative Defenses and First Amended Counterclaim to Plaintiffs' Amended Complaint, attached and marked as Exhibit "B").  Furthermore, on October 30, 2002, Plaintiffs were advised that Tropical's agent was in fact, Simon Wells.  (See Exhibit "A", paragraph 7).  Since Plaintiffs have known for nearly three months the identity of the individual allegedly making the alleged defamatory remarks, Plaintiffs cannot now claim that they are acting in good faith by filing a Motion for Leave to Amend on the eve of the Arbitration Trial.  Therefore, Plaintiffs are filing their Motion in bad faith and prejudicing Defendants which should necessitate the denial of Plaintiffs' Motion.

II.  ARGUMENT:

   Federal Rule of Civil Procedure 15(a) provides:

> a party may amend the parties pleading once as a matter of course at
> any time before a responsive pleading is served... otherwise a party
> may amend the parties' pleading only by leave of Court or by written
> consent at the adverse party; and leave to amend shall be freely given
> when justice so requires.
> F.R.C.P. 15.

   The District Court may deny leave to amend only if Plaintiffs delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party.  Transport Workers Union of Philadelphia v. SEPTA, 137 F.R.D. 220, 223 (E.D. Pa. 1991).  Although delay alone is generally not enough to deny leave to amend, the longer the moving party delays in seeking leave

to amend, the more likely it is that the nonmoving party has suffered prejudice in some way. Id. at 223-224. The moving party's delay must be coupled with an additional consideration, such as prejudice to the opposing party, before a Court may deny leave to amend. Id. at 223. Moreover, prejudice to the nonmoving party is considered the "touchstone" for the denial of leave to amend. Id. at 223. Additionally, "under a theory analogous to laches, delay can itself be evidence of bad faith justifying denial of leave to amend." Id. at 224, quoting Adams v. Gould, 739 F.2d 858, 868 (3rd Cir. 1985).

Other Federal Courts have held that a party is not entitled to amend the pleadings where they did not show that their discovery efforts were diligent and continuous. See Bergeron v. Celotex Corporation, 766 F.Supp. 518 (E.D. La. 1991). Also an amendment of a Complaint in a securities action was denied despite alleged newly discovered facts as it appeared that the Plaintiff could have moved to amend and supplement the Complaint at an earlier time and granting the Plaintiffs' Motion would not serve the interest of justice. Tyco Laboratories, Inc. v. Cutler-Hammer, Inc., 490 F.Supp. 1 (S.D.N.Y. 1980). Furthermore, leave to amend a pleading is most commonly denied because amendment will result in undue prejudice to other parties, it is unduly delayed, or is offered in bad faith or for dilatory purposes, and one of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay final disposition of the action. H.L. Hayden Co. of New York, Inc. v. Seamans Medical Systems, Inc., 112 F.R.D. 417 (S.D. NY. 1986).

Plaintiffs' reliance on Howze v. J&L Steel, 750 F.2d 1208 (3rd Cir. 1984) is misplaced. In Howze the Plaintiff represented herself pro se and the delay in filing the Amended Complaint was due to her difficulty in obtaining counsel and having newly retained counsel. Id. at 1210. In reaching its decision to allow Plaintiff to amend her Complaint, the Court stated the often cited principle that delay alone is not enough to deny amendment, that the touchstone is whether the nonmoving party will be prejudice. Id. Read in context with the facts of the case, the Howze holding shows that the Court was giving the Plaintiff a chance to "amend when justice so requires." Id. citing F.R.C.P. 15(a). The Howze Court also stated that the Defendant failed to argue prejudice in its Motion for Opposition. Id. at 1212.

In opposite of Howze, and in line with the reasoning of Transport Workers Union of Philadelphia, that a theory analogous to laches delay can itself be evidence of bad faith justifying denial of leave to amend, Plaintiffs' Motion for Leave to

Amend should be denied.  As stated above,  Plaintiffs have known since October 30, 2002 that Simon Wells posted the statement "watch out for crooks in this industry.  If you deal with this company make sure that you do it on a cash only basis, your money is not safe." on the World Wide, Inc.'s web site.  (See Exhibit "A" Response to Interrogatory #7).  Plaintiffs have also known that Mr. Wells submitted the phrase "Jeff the crook Kwait" to two or three internet search engines. (See Exhibit "A", Response to Interrogatory #12).  Despite having this knowledge for almost three months, Plaintiffs choose to amend their Complaint to include Mr. Wells on the eve of the Arbitration Trial.  If Plaintiffs' Motion to Amend is granted, Defendants' Answer to the Second Amended Complaint is due after the date of the Arbitration Trial, which is set for January 17, 2003. Defendants should not be made to present a case while the pleadings are still open.  Moreover, defense strategy is effected and prejudiced in that if Mr. Wells becomes a named party, his preparation for the Arbitration Trial will be insufficient.  Defendants were willing to stipulate to Mr. Wells' statement posted on the World Wide, Inc. web site and that he submitted it to two or three internet search engines, thereby streamlining the Arbitration Trial by eliminating a nondisputed issue.  Additionally, Mr. Wells has a prepaid ski vacation to Park City, Utah on the date of the Arbitration Trial.  Mr. Wells has not been identified as a witness by either party, nor his appearance demanded by the Plaintiff to date.  Mr. Wells will surely be prejudice if Plaintiffs' Motion to Amend is granted, as the Second Amended Complaint would be filed mere days prior to the Arbitration Trial.

Additionally, the Plaintiff does not cite Mr. Wells' actual deposition transcript nor do Plaintiffs attach it to their Motion to Amend.   Plaintiffs make the sweeping and vague summarization that "Mr. Wells further testified as to the circumstances surrounding his acts." (See Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Leave to Amend at page 2).  In fact, Plaintiffs entire Motion contains only Plaintiffs' characterization of Mr. Wells' testimony shaded to support Plaintiffs' position for their Motion for Leave to Amend.  At the very least, Plaintiffs' Motion for Leave to Amend should cite and attach Mr. Wells' deposition transcript in order that the Court may read the alleged newly discovered facts in their proper context.

Another example of Plaintiffs' mischaracterization of Mr. Wells' deposition testimony in their Motion for Leave to Amend which states: "Mr. Wells admitted that he took these actions for no stated reason and without justification."  (See

Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Leave to Amend at page 1). To the contrary of Plaintiffs' assertion in their Motion for Leave to Amend, Mr. Wells admitted that he made the statement and took the action because he believed his statement to be true. This is supported by the deposition testimony of Christy Kwait, KD Graphics' corporate secretary, with whom the following exchange occurred:

Question:    And do you have the cash to pay the outstanding invoices owed to Tropical now?

Answer: Yes.

Question:    Alright. Am I correct in saying that they [Tropical] haven't been paid that outstanding balance?

Answer: Correct.

Question:    And has KD Graphics returned ink to Tropical Graphics?

Answer: No.

(See the deposition transcript of Christy Kwait attached and marked as Exhibit "C" at page 60-61). It is not difficult to see that Mr. Wells believed his statements to be substantially true. As evident above, KD ordered products from Tropical, kept the product, and although KD has the money to pay Tropical, refuses to tender payment.

Defendants concede that Plaintiffs are correct in their Motion for Leave to Amend that Defendants cannot show the amendment will fail as a matter of law, at this time. However, as this case is now ripe for Summary Judgment, Defendants will be able to show futility of the amendment since the claims against Defendants as well as Mr. Wells must be dismissed as a matter of law. Defendants will reserve that argument for their intended Motion for Summary Judgment. Also, there is an issue as to whether this Court has personal jurisdiction over Mr. Wells, who is a Florida resident, officer of Florida corporation and all the alleged acts attributable for Mr. Wells took place in Florida.

As stated above, Plaintiffs' eleventh hour of filing of the Motion for Leave to Amend to file a Second Amended Complaint is filed in bad faith, dilatory and substantially prejudices Defendants. Moreover, if Plaintiffs' Motion for Leave to Amend is granted, Mr. Wells' defense will be substantially prejudice as the Second Amended Complaint will be filed, within days, if not hours of the Arbitration Trial. Therefore, Defendants respectfully request that this Honorable Court dismiss Plaintiffs'

Motion for Leave to Amend or, in the alternative, continue the Arbitration Trial in order that Mr. Wells could properly prepare his case, including filing the appropriate motion to dismiss based on lack of personal jurisdiction.

<div style="margin-left: 40%;">

Respectfully submitted,

REGER & RIZZO, LLP

</div>

By:      _____
      Jason J. Sweet, Esquire

02-955

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KD GRAPHICS, INC. and JEFFREY KWAIT   :
                  **Plaintiffs,**   :
                          :      CIVIL ACTION NO. 02-4041
      v.                     :
                          :
TROPICAL GRAPHICS, INC. and PAUL HIRST  :
                **Defendants**.

## CERTIFICATE OF SERVICE

I, JASON J. SWEET, ESQUIRE, hereby certify that I served a true and correct copy of Defendants' Response in Opposition to Plaintiffs' Motion for Leave to Amend and Memorandum of Law in Support thereof on the following by mailing same, first class, postage prepaid on January 7, 2003:

Andrew Lapat, Esquire
STEIN AND SILVERMAN, P.C.
230 South Broad Street, 18th Floor
Philadelphia, Pa 19102


By:    _____
           Jason J. Sweet, Esquire

8